## EVANS *vs.* ASHLEY.

1. A sheriff's sale of real estate is within the statute of frauds and perjuries, and unless some note or memorandum of the sale is made, the sale conveys no title.

2. A certificate of purchase, under the act of June 28, 1821, entitled, "An act for the relief of debtors and creditors," must be in the name of the sheriff, and such a certificate, signed by the deputy sheriff, in his own name alone, is illegal and void.—See Evans *vs.* Wilder, 5 Mo. Rep., p. 319, S.C.; 7 *Ibid.*, 362.

3. A certificate of purchase under said act of June 28, 1821, would not, after the repeal of that act, authorize the successor of the sheriff who made the sale to execute a deed for the land to the purchaser, without an order of court for that purpose, made on application of the purchaser, in conformity with the provisions of the act of 1807 concerning practice at law.

4. H. being the owner of 12½ arpens of land adjoining the city of St. Louis, laid the same off into town lots, and sold six of said lots to P., who had formerly been the owner of the whole tract. Under a judgment against P., obtained after the sale of the tract, and after its subdivision into town lots, the sheriff levied upon the whole tract, describing it in his advertisement as "12½ arpens of land adjoining St. Louis," &c., and sold the whole tract, and executed a deed to the purchaser for the same, describing it in the same manner as in the advertisement. At the time of this sale, P. had no other interest in the tract than his six lots. *Held:* That the description of the interest of P. in the tract was too vague and uncertain, and the sale and conveyance were therefore void.

---

*Evans* vs. *Ashley.*

---

5. Where a person owns several lots in a town, laid off on a particular tract of land, the sheriff cannot sell his interest in those lots, by an advertisement offering for sale the whole tract on which the town was laid off. Such a description is altogether too vague and uncertain.

6. The certificate of purchase given by the sheriff, under said act of 28th June, 1821, to the purchaser of land sold under execution, is a sufficient note or memorandum to take the sale out of the operation of the statute of frauds, but does not convey any title to the purchaser, and under such certificate the purchaser cannot maintain or defend in ejectment.

ERROR to the St. Louis Circuit Court.

Geyer, *for Plaintiff in Error.*

The plaintiff in error submits that the instructions ought to have been given, and being refused, the judgment ought to be reversed, for the following reasons:—

1. The advertisement under which the sale was made is insufficient, in that it does not state with sufficient precision where and at what time the sale is to be made.—Geyer's Dig., 268.

2. The certificate of J. C. Brown, of the sale to Paul Anderson, varies in the description of the property sold; and does not show when, where, or how the sale was made.—Geyer's Dig., 268.

3. It nowhere appears that the sale was made, as the law requires, at the Court-house door of the county of St. Louis, on some day during the term of the Circuit Court of that county.

4. The description in the advertisement, certificate, and deed of the six lots, is not such as to pass the title to said lots; said Price holding them at the time in severalty, and having no interest in any other part of the land included within the boundaries of the tract described.—Jackson ex dem. Livingston *vs.* Delany, 13 Johns. Rep., 537; Jackson ex dem. Carman *vs.* Rosevelt, *Ibid.*, 97.

5. The sheriff, Walker, had no power to make a deed for land sold by his predecessor, without an order of the court previously made, on application by the purchaser, and proof of the facts entitling such person to a deed.—Geyer's Dig., 269; Rev. Code, 1825, 370; Acts June session, 1821, ch. 32, November session, p. 101; Bissell *vs.* Payne, 20 Johns. Rep., p. 3.

Allen, *for Defendant in Error.*

It is insisted that, upon the whole record, the judgment of the court below was correct.

1. The representative of Anderson, the purchaser at sheriff's sale, being in possession, and having a certificate of purchase, is entitled to that possession against all who cannot show a paramount title.

2. The title was in Anderson by the certificate, or the certificate and deed after the time for redemption had expired, and his representative being in possession, the plaintiff could not eject him.—Fenwick *vs.* Floyd's Lessee, 1 Harris and Gill, 172; Simonds *vs.* Catlin, 2 Caine's Rep., 60.

3. That, on the day of the rendition of the judgment, and on which the sheriff sold these lots to Darby, Price had no title, nor at the time of the sale had he any title subject to sale on execution.

It is further insisted, that there is no error in the refusal 'to give the first instruction asked by the plaintiff.

It is further insisted, that there is no error in the refusal to give the second instruction:—

1st. Because there is no evidence to show that O'Hara had laid out the land into town lots and streets.

2d. Because the land, as advertised, was sufficiently certain.

SCOTT, *Judge, delivered the opinion of the Court.*

This was an action of ejectment, brought by the plaintiff against the defendant in error, for six lots in O'Hara's Addition to St. Louis, making together one hundred and eighty feet by eighty feet: plea, not guilty; on which there was a verdict and judgment for the defendant; to reverse which, the plaintiff prosecutes this writ of error. The following are the facts, as they appear from the bill of exceptions:—Risdon H. Price, being the owner of $12\frac{1}{2}$ arpens of land, of which the lots mentioned in the declaration were a part, conveyed, on the 16th March, 1820, one undivided half of the same to William M. O'Hara. This deed was recorded on the 17th May, 1820. On the 1st September of the same year, the said Price conveyed the other half of the said tract of land to the said O'Hara. This deed was recorded on the 20th October following.

On the 1st September, 1820, the said O'Hara conveyed to the said Price the six lots in the declaration mentioned, situate at the upper end of the town of St. Louis, being parts of a tract of land conveyed to O'Hara by Price, as aforesaid, and described on a map annexed to the deed of conveyance, as lots Nos. 82, 83, 84, 85, 86, 87, which lots are each thirty feet wide, and eighty feet deep. This conveyance was recorded on the 20th November, 1827.

In August, 1829, A. H. Evans recovered, in the St. Louis Circuit Court, a judgment against Risdon H. Price, above named, on which, on the 12th January, 1832, an execution issued, by virtue of which the said six lots were sold to J. F. Darby, to whom, on the 16th April following, the sheriff executed a deed for the same. Darby, on the 20th August, 1832, conveyed the said lots to A. H. Evans, the plaintiff in error.

The title set up by the defendant is as follows:—On the 26th December, 1820, Wm. O'Hara conveyed, by deed of that date, to Paul Anderson, the tract of $12\frac{1}{2}$ arpens above mentioned, excepting 25 lots, each thirty feet wide and eighty feet deep, before conveyed by said O'Hara, as follows:—two to F. Dent, six to R. H. Price, and fourteen to Thomas Collett. This conveyance was recorded on the 24th March, 1821. Several judgments were obtained against Risdon H. Price in the Supreme Court, and in the St. Louis Circuit Court, in the spring of the year 1821. Upon the judgments obtained in the Circuit Court, executions were issued, returnable to the August term, 1821. By virtue of these execu-

tions, and the executions from the Supreme Court, the $12\frac{1}{2}$ arpens of land before mentioned were levied upon and sold, without reservation or exception, the following being the description of the same contained in the sheriff's advertisement, viz.: "$12\frac{1}{2}$ arpens of land, near the town of St. Louis, and south of Elias Rector's, purchased of said Price of Edward Hempstead, administrator of the estate of M. Lewis, deceased." After this sale, a certificate thereof, under the act of 1821, for relief of creditors and debtors, was made. This certificate commenced thus: "I, Joseph C. Brown, sheriff of St. Louis county," &c.; and it certified that he, Brown, on the 28th day of August, 1821, exposed to sale a tract of land containing $12\frac{1}{2}$ arpens, more or less, except certain lots sold to Josiah Spalding, agent of Abraham Beck, and F. Dent, (fifteen in number,) situate above and adjoining the town of St. Louis, being the same $12\frac{1}{2}$ arpens that said Price acquired by deed from E. Hempstead, administrator of the estate of M. Lewis, deceased; and that Paul Anderson being the highest and last bidder, the same was struck off to him; and that the said Anderson would, on the 28th day of February, 1824, be entitled to a deed therefor, unless the same should be redeemed by virtue of the act of assembly, entitled, "An act for the relief of debtors and creditors." This certificate was recorded within ten days from the sale, and was signed, "John K. Walker, deputy-sheriff."

On the 20th September, 1825, John K. Walker, the then sheriff, and successor of J. C. Brown, the sheriff at the time of the sale last above-mentioned, executed a deed to Paul Anderson, for the tract of $12\frac{1}{2}$ arpens of land, excepting the fifteen lots mentioned in the said certificate. This deed was executed by Walker, without any other authority than that he possessed as sheriff, and its validity rests on the act of 1821, for the relief of debtors and creditors, or on some supposed principle empowering a succeeding sheriff to execute deeds for lands sold by his predecessor, or it is executed without authority.

The defendant derived title to the $12\frac{1}{2}$ arpens, including the lots in dispute, from Paul Anderson, by regular conveyances; and it was admitted, that she was in possession of the lots sought to be recovered by this suit, at its commencement.

The plaintiff asked the two following instructions, which were refused, and the refusal excepted to :—

1. That the deed from J. K. Walker, sheriff, to Paul Anderson, given in evidence in this case by the defendant, is inoperative, in law, to convey the lots in question, or any of them, to Paul Anderson.

2. If the jury find from the evidence, that Wm. M. O'Hara, (being the owner of the tract of land described in the deed of Walker, sheriff, to Paul Anderson, and in the certificate of sale of J. C. Brown, sheriff, to Paul Anderson) had laid off the said tract of land into town-lots and streets, and had sold to R. H. Price six of said lots, and to other persons, other of said lots ; and that, at the date of the judgments against Price, under which defendant claims title, said Price was not otherwise interested in said tract of land, than as the owner of said lots, then the title claimed under the sale by the sheriff is invalid.

It was contended for the defendant, that the certificate of John Walker, deputy sheriff, is sufficient evidence of the sale, under the act for the relief of debtors

and creditors, approved 28th June, 1821; and that the deed of J. K. Walker, the successor of J. C. Brown, was sufficient to pass the title of Price to the lots, after the time of redemption had elapsed; that the execution of the deed is an official act; that the office of sheriff is a *quasi* corporation, and by analogy, the successor in the office of sheriff would seem to be the proper person or officer to consummate what his predecessor had failed or was disabled to do. No authorities are cited for this view of the subject, and the course of the argument will render a review of the case of Evans *vs.* Wilder (7 Mo. Rep, 359) necessary. It seems to be settled that a sheriff's sale of real estate is within the statute of frauds and perjuries, and unless some note or memorandum of the sale is made, the sale conveys no equitable, much less legal, title. (Simonds *vs.* Catlin, 2 Caines' Cases in Error; Jackson *vs.* Catlin, 2 Johns. Rep., 248; 8 *Ibid.*, 520.) On what principle is it attempted to support the validity of the certificate signed by the deputy sheriff? In the case of Stewart *vs.* Cave, (1 Mo. Rep., 752,) it was held, that letters of administration granted by a deputy clerk, in his own name, were void. In that case the letters were granted in the name of the deputy, and signed by him as deputy. In the case of Post *vs.* Caulk, (3 Mo. Rep, 35,) letters of administration were granted in the name of the chief clerk, and sealed with his official seal; but signed by the deputy clerk. On this state of facts, the court observed—"These letters seem to us to be only voidable, and not void; and we do not mean to say they are voidable, but at most, only so." The court laid stress on the omission in the statute to require that the letters should be signed by the clerk. The act of 1821, above cited, required that the certificate of sale should be signed by the sheriff.

The doctrine, that a name in the body of an instrument should be deemed a signing, was first advanced on the construction of the fifth section of the third chapter of the statute of 29 Charles II., commonly called the statute of frauds and perjuries, which directed, that all devises of lands or tenements be in writing, and signed by the party devising the same. The case of Lemayne *vs.* Stanley (3 Leviwz) is the first which arose under this statute. In that case, the will was written wholly by the devisor; it was all in his own hand-writing; and from this case the doctrine, that the recital of a name in the body of an instrument is a signing, seems to have had its origin. Upon this a sensible writer remarks:—"The word *signing* conveys, to a common ear, not versed in the subtlety of technical reasoning, a mere simple idea, the writing the name of the agent at the bottom of the act, thereby formally authenticating it as his; it requires, therefore, the ingenuity of a schoolman, so far to wrest this word out of its natural sense, as to construe it to mean the recital of a name in any part of an instrument where common form or accident may happen to introduce it." Nothing but the strong bent of the times in favor of this mode of alienation, which equally pervaded the courts of law and the people, and which had induced the loose construction of the word "writing" in the statute of wills, that rendered the statute of frauds necessary, could have given color to the argument in favor of such a construction. Lord Hardwick, commenting on the case of Lemayne *vs.* Stanley, says, "It cannot be sustained, unless you add one of two circumstances—either that the witnesses

were present when the will was written; or, if they were not present, that the devisor acknowledged it to be his writing when he called them in to attest it." (Morrison *vs.* Turnour, 18 Ves., 183.) Chancellor Kent expresses his dissatisfaction with the rule when applied to promissory notes, and says, "Such a mode of authentication is so much out the common course, that a note wanting the usual subscription would be deemed imperfect, and it would, in point of fact, destroy its currency, and the public would very reasonably conclude, that the note had been left unfinished, and had got into circulation by fraud or mistake." (3 Kent, 78.) Powell applies the doctrine only to cases in which the will has been wholly written by the devisor. (Powell's Devises, 61, 2.) Cruise maintains the same principle, 6th vol., title, "Devise," 49. The cases under the two sections of the statute of frauds, respecting agreements, in which the doctrine has been recognized, all go upon the supposition, that if the party sought to be charged did not write the agreement himself, yet he has, by some act or in some manner, recognized the contract, and made it his own. (Schneider *vs.* Norris, 2 Maule and Selwyn, 286.) Indeed, it would be strange to contend, that an individual had personally authenticated an act which, it does not appear, he has ever heard of or seen; and because his name has been written by a third person, by way of recital, in the body of an instrument, that he, whose name is thus written, has authenticated that instrument by signing it. If the certificate was without a signature at the bottom, it might, with greater semblance of propriety, be contended that it was the act of Brown, as his name is in the body of it: but that is not the case; the instrument is signed by J. K. Walker, and not being in the name of the sheriff, his act is without authority and void. — Simonds *vs.* Catlin, 2 Caine's Cases in Error; 1 Tucker's Com., 48.

This seems distinguishable from other cases on this subject, as the instrument has been signed by another person than him whose name is in the body of it. It seems, therefore, we cannot say it was signed by any other person than him by whom it was actually subscribed.

As to the deed executed by John K. Walker, the successor of J. C. Brown, by whom the sale was made, it is urged, that, inasmuch as the terms of the 74th section of the act concerning judicial proceedings, Geyer's Digest, did not extend to the case of a sheriff whose term of service expired by limitation, there was no mode prescribed by which a purchaser could obtain a deed for land sold under execution by a sheriff, whose term of service had expired. Admitting, for argument's sake, that the 74th section of the act above cited did not empower a succeeding sheriff to execute a deed for land sold by his predecessor, whose term of service had elapsed by limitation, does it follow that the successor of the sheriff who sold the land would have the power? It is a rule, that, in order to form a right judgment, whether a case is within the equity of a statute, you should suppose the law-maker present, and propound to him this question: Did you intend to comprehend this case? Then you must give yourself such answer as you may imagine he, being an upright and reasonable man, would have given. If it be that he did mean to comprehend it, you may safely hold the case to be within the equity of the statute; for, while you do no more than he would have done,

you do not act contrary to the statute, but in conformity thereto. (6 Bacon, 386.) Now, apply this principle of interpretation to the deed executed by the successor of J. C. Brown, the sheriff at the time of the sale of the land. If the law would not entrust the successor to the sheriff who made the sale, and who had died, to make a deed without an order on a petition filed in the Circuit Court, why should a successor to a sheriff, whose term of service had expired, be permitted to do it without such order? Is it possible to conceive any difference between the cases? As the law-maker has denied the authority to the successor, in the one case, to make a deed, without an order of the Circuit Court, can a reason be assigned why he should not deny it to the other? We confess we can see none.

If there had been no provision by law on the subject, let us inquire how the matter would have stood at common law, and ascertain whether the successor of the sheriff, whose term of service had expired, could execute a deed for lands sold by his predecessor? By the common law, an execution was an entire thing; he who began it must have ended it; and if a sheriff seized goods, and returned, that they remained in his hands *pro defectu emptorum*, and he should afterwards be removed, yet it was his duty, and not that of the new sheriff, to proceed in the execution. (6 Bacon, 161; 2 Johns. C. Rep.) And if a sheriff seized property under an execution, and died before the execution was executed, his representatives were responsible for the property sequestered. (2 Johns. C. Rep., Mason *vs.* Sutam, Dalton, 517.) This principle has been applied to sales of land under an execution.

In the case of Allen *vs.* Trimble, (4 Bibb, 21,) it was held, that a deed made by a sheriff, whose term of service had expired, for lands sold by him whilst in office, was valid.

In that case, it was objected, that the principle of the common law, above stated, grew out of the sale of chattels under execution, and should not be applied to the sale of lands. To this it was answered, it was owing to the nature of the writ, and not the description of property upon which it operated, that gave rise to this principle; and as the legislature, in subjecting lands to the payment of debts, had adopted that description of writ whose qualities gave rise to the principle, it was fair to presume it was intended that the sheriff who might take the land under a *fieri facias* should, according to this principle, sell and convey the same, though his term of office should expire before the sale or conveyance. In the case of Jackson *vs.* Collins, 3 Cowen, 95, it was held, that an execution against the property of a defendant party, executed by the old sheriff, shall be completed by him; and in relation to any such execution in the sheriff's hands, when he goes out of office, he continues sheriff, and may act by deputy as if he was still in office. In that case it was held, that a deputy-sheriff, acting in the name of his principal, may complete an execution, by sale and conveyance of lands, after the sheriff goes out of office, provided the execution was levied before.

The doctrine in the cases above cited is asserted with respect to a sale of lands, and is based on general principles, without any reference to statutory enactments. From this consideration of the subject, it is not possible to see on what ground, or by what principle, the deed of J. K. Walker can be sustained. If it is unsup-

ported by the 74th section of the act concerning judicial proceedings, as not being executed in conformity to its provisions, and is not sustained by the principles of the common law, it must fall to the ground; for the act of 1821, before cited, was repealed at the date of the execution.

As to the question whether the land was sufficiently described in the advertisement and deed of the sheriff, we are impressed with its importance, and are aware of the consequences that may ensue from requiring too strict a description of lands sold under executions. Our opinion must operate retrospectively, and many may be disturbed in their possessions; but it is of vast importance, when a debtor's estate is exposed to sale by the law, and when the public are invited to attend that sale, that they should know what is to be sold. A satisfactory description of the premises will prevent fraud and speculation in a few who might wish to obtain large estates at a sacrifice. When an individual voluntarily conveys his estate to another, he and his vendee can make such terms, and give such conveyances, as they choose; but when the law seizes a man's land, and disposes of it for him, it ought to be done in such a manner as will produce the greatest price. Large and valuable estates may, by a loose description in a sheriff's advertisement, be sacrificed, when, if they were sufficiently described, full value might be obtained for them. A sufficient description of the lands to be sold is advantageous alike to the debtor, the creditor, and the public; to the debtor, because it enables him to pay his debt; to the creditor, for it tends to the satisfaction of his execution, which is the fruit of the law; and to the public, because it frees them from imposition. Other courts have been impressed with these considerations, and have asserted and maintained the principle with a constancy significant of its importance.

Freehold estates were not sold under a *fieri facias* in England, consequently, no cases on this question can be found in English books. In the execution of the writ of elegit, given by the statute of 13 Edward I., the sheriff always set out the portion of lands allotted to the creditor by metes and bounds, which were described in his return. (Douglass, 473.) In the case of Simonds *vs.* Catlin, (2 Caine's Cases,) it was held, that a general sale by the sheriff of all that tract of land in the town of Pompey, in the tenure and occupation of the defendant, did not comport with the rule, that at sheriff's sales no property passes but what was at the time ascertained and declared. The court observed, it might as well have been all that tract of land in the county in his possession; and were of opinion, a more definite description of the situation and amount of the land, and of the quantity of the defendant's interest therein, ought to have been stated; and that the evidence of this sale, even admitting it to have been duly made by the sheriff, had not the requisite certainty. In the case of Jackson *vs.* Rosevelt, (13 Johns. Rep., 97,) it was held, that a sheriff's deed to a purchaser, under an execution, describing the premises sold no otherwise than as all the lands and tenements of the defendant situated, lying, and being in the Hardenburgh patent, was void for uncertainty. The court, in commenting on this case, observed, that the description was too general; it did not define the lots, or parts of lots, of land owned by the defendant. No estimate of the value of the lands offered for sale could be made

from this general and indefinite description, and without some definite information as to its situation, there must generally be a sacrifice of property, either by the debtor or purchaser. In most instances, if not invariably, the former would bear the loss. The officer ought to prevent such a consequence. The least that can be required of him, in making the sale, is, so to locate the lands as to afford means to the bystanders and bidders of informing themselves as to the value. The next case is that of Jackson *vs.* Delaney, (13 Johns. Rep.,) in which it was decided, that under a general cause, in a sheriff's deed, of all other lands of defendant, nothing will pass. In this latter case, the reasons of the rule are set forth with great force and vigor, and nothing is left to be added to the arguments of the court.

It was said to be altogether inadmissible, that the property of a defendant should be swept away on execution in this loose and undefined manner; it would operate as a great oppression on debtors, and lead to most odious and fraudulent speculations. No person attending a sheriff's sale can know what price to bid, or how to regulate his judgment, if there be no specific or certain designation of the property. To tolerate such judicial sales, would be a mockery of justice. It ought to be received as a sound and settled principle, that the sheriff cannot sell any land on execution, but such as the creditor can enable him to describe with reasonable certainty, so that the people, whom the law invites to such auctions, may be able to know where and what is the property they are about to purchase.

In the case now under consideration, the court below refused to instruct the jury, that if they find, from the evidence, that Wm. M. O'Hara, being the owner of the tract of land described in the deed of Walker, sheriff, to Paul Anderson, had laid off the said tract of land into town lots and streets, and had sold to R. H. Price six of said lots, and to other persons other of said lots; and that at the date of the judgments against said Price, under which the defendant claims title, said Price was not otherwise interested in said tract of land than as the owner of the said lots, then the title claimed under the sale by the sheriff is invalid.

In discussing the propriety of this instruction, the facts assumed by it must be taken to be true. If twelve and a half arpens of land are laid off into town lots and streets, and a debtor owns six of said lots, making one hundred and eighty feet in width by eighty feet in depth, is that description of his interest in the land sufficient, which represents him as the owner of the whole tract with a small exception? If a person owned several lots in a town laid off in a particular half-quarter section, could a sheriff sell his interest in those lots, by an advertisement offering for sale, as his property, the half-quarter section on which the town is laid off? Would such a description be of any avail in enabling purchasers to ascertain what was to be sold? It may be said, that the debtor could not be prejudiced by such a description, because he is represented as owning more land than he really does. But the law, in its control of this subject, looks not only to the interests of the debtor, but also to those of the people who may be induced to attend sheriff's sales, and whilst it sedulously protects the rights of debtors, it is also anxious to prevent imposition on purchasers. This case presents a singular state of facts. Price, some time before the sale, had conveyed the twelve and a half arpens to O'Hara. The conveyances by which that was effected were of

24

record. O'Hara afterwards conveyed six lots, part of the said twelve and a half arpens, to Price. This deed is unrecorded. Subsequently, O'Hara aliens the the said tract of land to Paul Anderson, except twenty-five lots, in which number were included the six conveyed to Price. At the sheriff's sale, Anderson becomes the purchaser, and it would seem that he alone knew that Price had any interest in the twelve and a half arpens of land, for to all others it would appear that Price had conveyed away the said tract of land to O'Hara. It is said, that the conveyance to Price for the lots was not recorded, and it could not be known what interest he had, and if too accurate a description of the premises was required under such circumstances, it would enable a debtor, by withholding his deed from record, to prevent a sale of his lands. We cannot see that much inconvenience will arise from this source. It does not appear that any efforts were made by the sheriff, or by the creditors, to ascertain what interest Price owned in the tract of land, nor but that proper inquiries would have been effectual. Instances would be rare, in which a purchaser would expose himself to the dangers resulting from an unrecorded deed, for the sake of concealing his ownership, when there are so many other modes of ascertaining the fact. But if it were necessary, would not a court of equity compel the parties to such a deed to make the necessary discovery, in analogy to the aid it frequently affords to executions at law? But could Price, by keeping his deed from record, authorize the sheriff to adopt a mode of sale which was calculated to mislead and deceive the public? If he had made inquiries to ascertain Price's interest, and failed to obtain information, why did he not state the circumstances, and make the sale in such a way as that nobody could have been deceived?

The case Thomas *vs.* Turvey, (1 Harris and Gill's Rep., 435,) has been cited by the appellee, in support of the validity of the deed now under consideration. The note of the reporter to the case is, that a levy on a tract of land, called Borough Hall, under a *fieri facias*, against one who was seized of a part of such tract, and a sale under it, will pass his interest to the purchaser. Borough Hall contained 500 acres, and the defendant in the execution owned 130 acres, part of said tract. We do not think the case warrants the inference deduced from it, or at least that it is not stated with that precision it should have been, and its defect in this particular makes it, apparently, an authority in support of the argument of the defendant. There were several executions in that case. In the schedules of appraisement, and returns of the sheriff to some of them, the defendant's interest was described as part of a tract of land called Borough Hall, containing the quantity of 130 acres, more or less. In the schedule of appraisement, and return of the sheriff to the third execution, the land was described to be a tract called Borough Hall, containing 130 acres, more or less. The first description the court held to be clearly bad, but as to the last, it was remarked, that it was in the usual form, and was upon the whole tract called Borough Hall, for which the suit was brought, and was certain and sufficient. So this case determines, that if a person is located on 130 acres of land, part of a tract of 500, known by a certain name, and the 130 acres are sold under the name and description of the whole tract, the sale is valid, because whatever may have been the quantity of the whole

tract, only 130 acres are advertised and sold. In the case of Fenwick *vs.* Floyd, in the same book, it was held, the schedule of appraisement and return of the sheriff, showing that he had levied on part of Resurrection Manor, containing 251 acres, more or less, was too vague and uncertain, in not describing the part of the manor where the 251 acres were located, and that no location could be made under such a description.

It is further urged, by the defendant, that even if the deed of J. K. Walker was inoperative, yet the sale and certificate of the sheriff vested such title in Anderson and his representatives, as would prevail in ejectment against a person not showing a better one. The case of Fenwick *vs.* Floyd, (1 Harris and Gill's Rep.,) was cited in support of this position. This was a case decided in Maryland, and the opinion of the court leaves us in the dark as to the grounds on which it rests. Whether it was based on general principles, or on the peculiar laws of Maryland, we are not informed. It seems, however, to have been a matter well settled, as it is asserted without hesitancy, and no reason or authority alleged in its support. It has been held by this court, (McCabe *vs.* Hunter's Heirs, 7 Mo. Rep.,) that an instrument, under seal, was necessary to pass a title to real estate, since the introduction of the common law and the enactment of the statute of frauds and perjuries. The certificate of the sheriff, under the act of 1821, and the sheriff's return on the execution, when sufficiently certain, are a note or memorandum to take the sale out of the operation of the statute of frauds. They create a lien, they give a right to the land, but they do not convey title, and until title is conveyed, the purchaser cannot maintain or defend in ejectment. The statute concerning ejectment enumerates all the equitable titles on which that form of action may be maintained, and this is not one of them. (Catlin *vs.* Jackson, 8 Johns. Rep., 520; Bissell *vs.* Payne, 20 Johns. Rep., 3.) The act for the relief of debtors and creditors, approved 28th June, 1821, under which the sale was made and certificate given, certainly did not contemplate that the certificate should pass title. The fourth section of that act, in declaring the effect of the certificate, says, it shall be notice to subsequent creditors and purchasers. Indeed, to say that the certificate passes title to the purchaser, would defeat the object and policy of the act. The eighth section of the act directs that the sale shall be completed by executing a deed of the premises sold to the purchaser; an act of supererogation if the title passed by the sale and certificate. The general law passed on the subject of executions, in force at that time, (Geyer's Digest, "Judicial Proceedings," sec. 66, p. 267,) rendered a deed necessary for passing to the purchaser the estate and interest which the debtor had in lands sold under execution.

As to the point made, that Price had no title on the day of the rendition of the judgment, under which the plaintiff claims through Darby, the land having been previously purchased by Anderson, under whom the defendant claimed; it will be sufficient to observe, that the point made assumes that all the other points in the case are for the defendant.

We are of opinion the court erred in refusing the instructions asked by the plaintiff, and therefore reverse the judgment, and remand the cause.