## LEE v. VAUGHAN'S SEED STORE.

### Opinion delivered November 6, 1911.

1. FRAUDS, STATUTE OF—"PARTY TO BE CHARGED."—"The party to be charged" within Kirby's Digest, section 3656, requiring, in case of sales of goods for the price of $30 or upward, that there shall be "some note or memorandum signed by the party to be charged," means the one against whom the contract is sought to be enforced. (Page 72.)

2. SAME—SUFFICIENCY OF SIGNATURE.—To satisfy the requirements of the statute of frauds, a signature to a sale of goods for the price of $30 or upwards consists of both the act of writing the party's name and the intention thereby to authenticate the instrument. (Page 73.)

3. SAME—SUFFICIENCY OF SIGNING.—The fact that a memorandum of a sale of goods for a price within the statute of frauds contains the name of the vendor printed in the body of a printed contract and on the back of it, without any intention to authenticate the instrument, did not constitute a signing thereof within the meaning of the statute of frauds. (Page 74.)

4. SAME—SUFFICIENCY OF SIGNING.—Subsequent letters referring to an unsigned order of sale which show that the alleged vendor did not recognize the order as a contract will not be held to supply the lack of signature to satisfy the statute of frauds. (Page 74.)

5. AGENCY—AUTHORITY OF DRUMMER.—In the absence of special authority to bind his principal, a drummer can merely solicit and transmit orders, and the contracts of sale do not become complete until the orders are accepted by his principal. (Page 75.)

6. SAME—AUTHORITY OF DRUMMER—BURDEN OF PROOF.—One who claims that a drummer had authority beyond that of soliciting orders has the burden of proving it. (Page 75.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; affirmed.

### STATEMENT BY THE COURT.

The appellant sued appellee on an alleged contract for the sale of onion sets, as follows:

"Contract for onion sets between Vaughan's Seed Store, of the city of Chicago, State of Illinois, party of the first part, and Arthur G. Lee, of the city of Fort Smith, State of Arkansas, party of the second part. Said party of the first part sells said party of the second part the following amount of onion sets for delivery January, 1908." Then follows description of the onion sets, and the terms of sale and shipment are set forth. The alleged contract is signed by appellant, and bears date April 8, 1907. It is made subject to certain "terms and conditions on the back thereof, which are hereby agreed to." Among other recitals on the back is the following:

"It is further agreed that the said Vaughan's Seed Store will care for this stock, keep it in the same warehouse, and give it the same attention and care that they give any unsold portion of their own crop."

Appellant alleged an offer to accept and comply with the terms of the contract on his part and a refusal on the part of the appellee to comply with the contract on its part, to the damage of appellant in the sum of $642.

The amended answer specifically denies every allegation in the complaint except that appellee is a corporation; then alleges that the appellant gave to H. Cheeseman, a traveling salesman, an order for a car of onion sets to be submitted to appellee for acceptance or rejection; that appellee refused to

accept the order, and at once notified appellant of such refusal. The answer also alleges that the appellee made no contract with appellant for the sale of such onion sets, and that said H. Cheeseman made no contract with appellant in appellee's behalf; and that the said Cheeseman had no authority to make sale of onion sets. Then the answer sets up a custom of the trade to the effect that all such orders must be, and are, taken subject to confirmation, and that appellant knew of the custom.

The last paragraph of the answer sets up the statute of frauds in bar of the action, for the reason that there was no memorandum or contract of sale signed by the party to be charged.

The appellant testified to the execution of the alleged contract. His testimony shows that one Cheeseman was the agent of appellee in the territory where Fort Smith is located, and that he made the alleged contract on behalf of appellee with the appellant. The handwriting in the body of the instrument, except the last sentence, was that of Cheeseman. Appellant wrote the last sentence towit: "To be shipped when ordered out during January."

The alleged contract was signed by appellant, and the name of appellee was printed in capital letters in the body of the contract, but was not written or printed at the bottom of the contract where the signature of appellant appears. Nor was the name of appellee written anywhere in the instrument by the agent of appellee. On April 16 appellee wrote appellant as follows:

"We regret that we are unable to take care of your contract order for onion sets given our Mr. Cheeseman, as we seem to be pretty well booked up on the varieties in question."

After this a correspondence followed between appellant and appellee, in which it appears that appellant insisted that he had a contract with appellee for the delivery of the onion sets, and appellee on the other hand claimed that it had not booked appellant's order, and therefore had not approved or accepted same, and had not entered into a contract for the sale and delivery of the onion sets. Appellee also claimed in its letters that the agent taking the order had no authority to bind appellee to approve and accept same; that the order so taken was, according to the custom of appellee and the usual custom of the

trade, subject to its approval before it became a binding contract, and that it had never been accepted and approved, but on the contrary had been expressly rejected by appellee's letter in which it stated that it was "unable to take care of your (appellant's) contract order for onion sets." Appellant testified to the difference between the price of onion sets under the alleged contract and the market price, his evidence tending to show that he was entitled to recover, should the alleged contract be upheld, in the sum of $710. He asked the court to direct a verdict for him in that sum, but the court directed a verdict instead in favor of appellee, and appellant excepted, and duly prosecutes this appeal.

*Read & McDonough,* for appellant.

1. The contract was signed by both parties within the meaning of the law. Kirby's Digest, § 3656; Clarke on Cont. 125; Greene (Ia.) 430; 165 Mass. 328; 11 N. J. Eq. 349; 14 Johns. 484; 32 Pac. 737; 103 N. W. 122; 91 Ark. 167.

2. The use of the printed form with the appellee's name printed therein, etc., and the filling in of the blanks by its agent make a signature binding appellee. 70 Pac. 247; 13 Mass. 87; 12 Johns. 107; 7 Am. Dec. 286; 51 Am. St. Rep. 611 and note; 74 Ark. 395; 3 Wend. 112; 3 Parsons on Contracts, 8; 1 *Id.* 591; 52 Am. St. 516; 16 Gray 436.

3. The letters of appellee constitute a sufficient signing of the contract. 45 Ark. 28; 88 N. E. 290; 63 S. E. 562; 100 Ill. App. 39; 44 Ch. Div. 205; 28 *Id.* 305; 20 *Id.* 90; 5 Ark. 161; 91 Ark. 162; 136 U. S. 68; 95 U. S. 289. Appellee is estopped. 33 Ark. 465; 35 Ark. 376; *Ib.* 293; 29 *Id.* 218; 12 *Id.* 121. The signing of a letter, after the contract, is sufficient. 86 Ill. 246; 72 Ark. 359.

4. The appellant signed the contract, and the appellee accepted it, and it is therefore binding. 26 S. E. 201; 42 Minn. 494; 44 N. W. 794; 110 Pac. 721; 11 Pa. St. 503; 143 Ind. 340; 48 Am. St. 592; 115 S. W. 294; 118 N. W. 441; 111 N. Y. S. 472; 91 Ark. 167.

5. The court should have directed a verdict for appellant upon the undisputed evidence. Kirby's Digest, § 1236; 89 Ark. 50; 82 *Id.* 11; 161 Mass. 153.

6. At least the court should have submitted, as a fact,

to the jury the question as to whether the printing of the signature of appellee was intended as a signature. 42 Am. Rep. 343.

*George W. Dodd,* for appellee.

1. The contract was not signed by both parties, nor by the party to be charged. Kirby's Digest, § 3656; 20 Cyc. 272; 72 Ark. 259; 76 *Id.* 257; 42 Am. St. 72; 8 Blackf. 208; 40 Ind; 9; 3 Me. 409; 72 Mass. 25; 66 Am. Dec. 394; 104 Mass. 407. 25 A. & E. Enc. Law. (2 ed.) 1064-5; 21 Ark. 409; · Greenl. Ev. (14 ed.) § 674.

2. The use of the printed form with appellee's name printed therein and the filling therein of the blanks do not make a signature. 70 Pac. 242; 51 Am. St. 611; 23 Ind. 163; 95 Mass. 353; 90 Am. Dec. 196; 11 N. J. Eq. 349; 1 E. D. Smith 144; 16 N. Y. Sup. Ct. 171.

3. The letters of appellee do not constitute a sufficient signing. 63 S. E. 562; 45 Ark. 17; 88 N. E. 290; 136 U. S. 68; 72 Ark. 359.

4. The signing by appellant does not make the contract binding because there was no acceptance. 38 How. Pr. 444; 26 S. E. 201; 42 Minn. 494; 44 N. W. 794; 110 Pac. 721; 48 Am. St. Rep. 592; 115 S. W. 294.

5. No judgment should be rendered here. The case was not fully developed. 89 Ark. 50; 82 *Id.* 11.

6. The evidence in this case, as a matter of law was insufficient to support a verdict. 63 S. E. 562.

7. The authority of drummers as a matter of law is well defined, and in the absence of a showing to the contrary their authority, as a general rule, extends only to the soliciting of orders. 6 A. & E. Enc. Law (2 ed.), 224; 58 Miss. 478; 79 Mo. 204; 14 Cyc. 1088; 61 S. W. 9, 10; 22 Ky. L. Rep. 1528; 89 Ga. 223; 9 Ill. App. 183; 24 Mich. 36; 39 Mo. 207.

WOOD, J., (after stating the facts.)  1. Section 3656 of Kirby's Digest provides:  "No contract for the sale of goods, wares and merchandise for the price of $30 or upward shall be binding on the parties unless, first, there be some note or memorandum signed by the party to be charged."

Under the above section, in order to bind appellee to the alleged contract, it must appear that same was signed by ap-

pellee. "The party to be charged" is the one against whom the contract is sought to be enforced. 20 Cyc. 272 and note. See also *Vance* v. *Newman*, 72 Ark. 359; Century Dig., p. 2286, § 244, where cases are collected; Browne on the Statute of Frauds, § 365.

Does the printed name of appellee in the body, and on the back, of the instrument constitute a signature within the meaning of the above statute? Browne on the Statute of Frauds says: "In regard to the place of signature, there is no restriction. It may be at the top or in the body of the memorandum as well as at the foot. * * * But the name, beside being in his handwriting, must always be inserted in such a manner as to authenticate the instrument as the act of the party executing it, or, in other words, to show the intention of the party to admit his liability. The mere insertion of his name in the body of an instrument, where it is applicable to a particular purpose, will not constitute a signature within the meaning of the statute. And although it be so inserted as to control and direct the entire instrument, still the better opinion seems to be that its insertion must also be intended as a final signature, and that if it appear that the instrument was to be further executed it will not be taken to have already been sufficiently signed." Browne on the Statute of Frauds, § 357.

The agent of appellee was furnished with a form of contract containing blanks to be filled and with the name of appellee printed in the body and on the back thereof. The agent when he took the order for goods filled in the blanks, but he did not sign the name of appellee to the instrument, and did not write it in the alleged contract. The letters of appellee to appellant written after the instrument was signed by appellant (introduced by appellant himself) indicate that appellee's agent who took the order had no authority to sign appellee's name to the alleged contract. His authority, according to these letters, was only to solicit orders and submit them for consideration and confirmation of appellee at its home office. But, even if it could be assumed that the sales agent had authority to sign appellee's name, it does not appear that he did so. "A signature consists both of the act of writing the party's name and of the intention of thereby finally authenticating the instrument." Greenleaf on Evidence, § 674, quoted in *Vines*

v. *Clingfost*, 21 Ark. 312, and in *Board of Trustees* v. *Campbell* 48 La. Ann. 1546; *Davis* v. *Sanders*, 40 S. Car. 510; *Watson* v. *Fipes*, 32 Miss. 466; 25 Am. & Eng. Ency. of Law, 1065.

A name merely printed in an instrument where according to its purport the name should be mentioned in the recitals is not a signature within the meaning of the statute of frauds. See *Evans* v. *Ashley*, 8 Mo. 181. There must be a writing, stamping or printing of the name by the party to be charged, in person or through a duly authorized agent with the intention of authenticating and finally adopting the writing as his own. There is no proof to that effect in this record. We conclude therefore that the name of appellee printed in the instrument under consideration did not constitute a signing thereof within the meaning of the statute of frauds.

2. Whether or not the letters of appellee to appellant after the order of April 8 was taken, and with reference thereto, amounted to a signature authenticating the terms of the memorandum as a contract on the part of appellee within the statute was a proper question for the court. In the first letter of April 16 appellee informed appellant that it was "unable to take care of his contract order" for onion sets. In this letter appellee plainly told appellant that it could not fill his order. The designation of the instrument as "your contract order" meant no more than that it was a contract on the part of appellant when accepted by appellee, but informing him in the same letter that it could not accept it. In *Capital City Brick Co.* v. *Atlanta Ice & Coal Co.*, 63 S. E. Rep. 562, it is held that a letter is sufficient to take the agreement out of the statute if it acknowledge the existence of the contract, even though the same letter attempts to repudiate the contract. But the letter of April 16 can not be considered as anything more than information to appellant that appellee had received his order but could not accept and fill same. The subsequent letters but emphasize the fact that appellee did not recognize the order as a contract on its part, and that according to the custom of the trade it would not become a contract until confirmed or adopted by it, which it had not done and would not do. We are of the opinion that the above is the only reasonable conclusion to be drawn from the letters of appellee, which we have carefully examined.

No useful purpose could be attained by setting them out in detail.

The letters show that the agent of appellee was but a traveling salesman or drummer, and that he had no authority, beyond that of the ordinary drummer, to solicit orders for the sale of goods to be sent to his principal for the latter's acceptance or rejection.

The appellant testified that Cheeseman represented appellee in the Fort Smith territory, but he does not pretend to state the extent of his authority. Appellant does, however, introduce the letters of appellee, which, as we have stated, show that the extent of his authority was that only of a commercial traveler or drummer. As a general rule, a commercial traveler or drummer has no authority except that of soliciting orders for the sale of goods. Ex parte *Taylor*, 58 Miss. 478. "In the absence of special authority to bind his principal, a drummer can merely solicit and transmit the order and the contract of sales does not become complete until the order is accepted by his principal. 6 Am. & Eng. Ency. Law (2 ed.) 227 and note.

If any special authority existed beyond that of soliciting orders, the burden was on appellant to show it. *Holland* v. *Van Beil*, 89 Ga. 223; *Kornemann* v. *Monaghan*, 24 Mich. 36; 6 A. & E. Ency. Law, § 224.

The judgment is correct, and is affirmed.

---

NOTE.—See discussion by James B. McDonough, Esq., as to the sufficiency of a signature to satisfy the statute of frauds, and as to when necessity of signature is waived, in 74 Cent. L. Journal, 339.—(Rep.)