I. O. BURTON *et ux. v.* W. C. JONES.*

(*Nashville.* December Term, 1922.)

FRAUDS, STATUTE OF: Name printed in body of contract for deed held insufficient as "signature" within statute.

The name of vendor's agent, printed in the body of a contract for deed among the recitals, and not placed thereon with intent to bind the vendor, was not a signature to the memorandum, within the meaning of the statute.

Case cited and approved: Evans v. Ashley, 8 Mo., 181.

Cases cited and distinguished: Saunders v. Hackney, 78 Tenn., 194; Lee v. Vaughan's Seed Store, 101 Ark., 68.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.— HON. JAS. B. NEWMAN, Chancellor.

SETH M. WALKER and WM. WALLER, for appellants.

McCARLEY & STEPHENSON, for appellee.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This is a suit to recover damages for the alleged breach of a contract for the purchase, by the defendant, of a one hundred thirty-three-acre tract of land in Davidson coun-

---

*On sufficiency of printed or stamped signature within the statute of frauds see note in 37 L. R. A. (N. S.), 352.

ty.  The tract of land in question was owned by I. O. Burton and wife, Maude Burton, as tenants by the entireties.

On July 30th, 1920, I. O. Burton entered into the following written contract with W. W. Dillon & Co. to sell said tract of land at public auction, to wit:

"July 30, 1920.

"W. W. Dillon & Co., Nashville, Tenn.—Gentlemen: I hereby authorize you to proceed to advertise and sell at auction my farm about five miles out on the Lebanon pike, formerly known as the Sam Sweeney or Mayo farm, containing one hundred and thirty-two acres more or less, sale to be had on such date as you may select; purchaser to pay one-fourth cash, as present indebtedness, the balance payable in one, two and three years, with six per cent. interest payable annually.  I agree to pay for all advertising, auctioneer's fee and other necessary expenses including a commission of five per cent. to you for your services

"If for any reason the property should fail to sell, I agree to pay all expenses of the sale, but will not pay any commission.  If I decide to accept a bid of forty thousand dollars, or less for the property I agree to pay two-thirds of the regular commission mentioned above.

"Yours very truly."

This agreement was signed by Mr. Burton alone.  He testified that he requested Mr. Dillon to represent him and his wife, as they owned the tract of land together.  Mr. Dillon testified that he did not. know Mrs. Burton in the transaction, did not know that she had an interest in the property, and did not represent her.

W. W. Dillon & Co. is a trade name under which W. W. Dillon conducts a real estate brokerage business in Nashville.  Mr. Dillon advertised said land for sale on August

147 Tenn.—40

the 13th, 1920, at which time same was struck off by the auctioneer, Col. Gil Moore, to the defendant, Jones for the consideration of $40,000.

Shortly after said purchase, the defendant executed the following instrument, which is the basis of this suit:

"For and in consideration of the sum of forty thousand and no/100 dollars ($40,000) to be paid as follows:

"One-fourth cash assume two notes of $10,937.50 each due October 1, 1921, and 22, resp., and balance in one, two and three years, and the balance to be paid in three equal installments at 1, 2 and 3 years from date of execution of deed with six per cent. interest, payable semiannually with lien retained the undersigned owner or owners I. O. Burton, have sold through W. W. Dillon & Co., real estate agents, and agree to convey by a sufficient general warranty deed to the undersigned purchaser or purchasers, a certain tract or parcel of real estate, situated and being in the city of Nashville in the civil district of Davidson county, Tenn., and described and bounded as follows: Formerly known as the Sam Sweeney home place, containing one hundred thirty-three acres, more or less, and located on the Lebanon pike five and three-fourths miles from Nashville, north side of pike, possession given Oct. 1st.

"Taxes for 1920 to be paid by I. O. Burton.

"And the undersigned purchaser or purchasers, who have this day purchased said tract or parcel of land from the said vendors, agree to make said cash payment and to execute notes for the said deferred payments as soon as abstract of title can be examined, if the title is found to be good and the said vendors agree to make and deliver said

deed simultaneously with the payment of said cash. payment and the execution and delivery of said notes.

"In testimony whereof, we hereunto subscribe our names on this the 13th day of August, 1920.

W. C. JONES.

"The above is correct.

"———, Auctioneer."

Mr. Warmuth, Mr. Dillon's secretary, on the day before the sale, or on the morning of the sale, prepared said memorandum, in Mr. Dillon's office, on a printed form (the name W. W. Dillon & Co. being a part of the printing), and inserted with a typewriter the name I. O. Burton, as owner, also a description of the land, and the date, August the 13th, 1920. After arriving on the property, but before the sale, he inserted with a pen the terms of sale, and the following:

"North side of pike. Possession to be given October 1, 1920. Taxes for 1920 to be paid by I. O. Burton."

And at the bottom he wrote:

"The above is correct.

"———, Auctioneer."

At the noon hour on the day of the sale, the best and highest bid offered was $35,000 or $36,000, which was not satisfactory to the owner, whereupon a recess was taken for lunch. The defendant, Jones, was sent for, and, according to his testimony and that of Mr. Dillon, Col. Moore, and S. F. Bryan, another employee of Dillon, it was agreed that Jones should bid on the property up to $40,000, and if it were knocked off to him he was to convey to Burton, in payment for same, an apartment which he owned in Nashville, and which he had previously offered to exchange with Burton for said farm. This is denied

by Burton, his insistence being that Jones was to pay for the farm with money and notes as set forth in the instrument signed by Jones, but he admits that said instrument did not express the true contract in several particulars, which is unnecessary to detail here. Warmuth was not present at that conference and knew nothing about any agreement between the parties as detailed above.

When the land was knocked off to Jones, Warmuth inserted in the memorandum the consideration, and then handed it to Jones for his signature, which Jones executed, but, according to his testimony, without reading it.

Subsequently Burton declined to accept a deed to the apartment in payment for said farm, and thereupon filed the bill in this cause.

One of the defenses interposed, and which was sustained by the chancellor, was that of the statute of frauds. It being insisted that the instrument sued on was not signed by Mrs. Burton, or by any one authorized to bind her in the premises. The general rule as to the authentication of an instrument so as to comply with the statute of frauds is thus stated in 27 Corpus Juris, p. 288, to wit:

"The signing required by the statute is a signature to the memorandum placed there, or adopted or appropriated with the intention of authenticating the writing. The statute is not satisfied by the writing, printing or stamping of the name of a party to the contract by him or by his authority, or by the adoption or appropriation of a name, not for the purpose of signing and authenticating the instrument but for some other purpose. If an intent to authenticate the writing is shown, it is not necessary to go further and prove that the memorandum was signed

with intent to make a memorandum that is good under the statute."

In *Saunders* v. *Hackney*, 10 Lea, 194, Kirkpatrick drafted a deed in his own handwriting to Drennon, his name being inserted in the granting clause, but his signature did not appear at the end of the deed. After the death of both parties, the deed was found among the papers of the grantee, and the court adjudged it to be a valid deed and said:

"It seems logically to follow that a deed written by the grantor himself, and containing his signature in the usual granting clause, 'I, A. B., have sold, and do hereby sell and convey,' would be good, if actually delivered to the grantee as the deed of the grantor. Undoubtedly, the signature at the end of a deed, or other contractual instrument, has, by usage and universal custom, become so essential as evidence of complete execution, that there should be something more than the insertion of the grantor's signature, in his own handwriting, in the instrument, even if placed so as to control the entire instrument, to make it obligatory. There should be evidence or circumstances to show that the signature was intended to be final."

Assuming that Dillon was the agent for Burton and wife, there is no evidence that he undertook to authenticate the memorandum after the sale, or that he had any such intention. He never signed his name individually, or as agent, nor the names of his principals. So far as the record shows, he had never seen the instrument in question, and did not know that such an instrument had been prepared and signed by Jones until some weeks after the sale. There is no evidence that he intended the printed name

"W. W. Dillon & Co." to be final.  On the other hand, he testified that he made no such agreement, as agent for the complainants, as that set out in the instrument, and further testified that had he done so, according to his custom, he would have had the vendors and the auctioneer to attach their signatures to the instrument.  The question of authentication is largely one of intention, and we find no evidence that Mr. Dillon intended to authenticate this instrument, which was not completed until after the sale, and which the record fails to show that he saw or knew about until some weeks later.

The facts of this cause illustrate the wisdom of giving the statute a strict construction.  Even the complainants admit that this memorandum does not contain the true contract.

In *Lee* v. *Vaughan's Seed Store*, 101 Ark., 68, 141 S. W., 496, 37 L. R. A. (N. S.), 352, the court had this question under consideration and said:

"A name merely printed in an instrument where according to its purport the name should be mentioned in the recitals is not a signature within the meaning of the statute of frauds.  See *Evans* v. *Ashley*, 8 Mo., 181.  There must be a writing, stamping or printing of the name by the party to be charged, in person or through a duly authorized agent with the intention of authenticating and finally adopting the writing as his own.  There is no proof to that effect in this record.  We conclude . . . that the name of the appellee printed in the instrument under consideration did not constitute a signing thereof within the meaning of the statute of frauds."

Mr. Dillon did not sign his name to the memorandum either before or after the sale, and did not authorize any

Burton v. Jones.

one to sign it for him, and, in our opinion, did not intend to authenticate this instrument.  We are unwilling to extend the construction of the statute so as to bind the parties under the facts of this cause.

It results that the decree of the chancellor will be affirmed with costs.