Common Pleas Court of Hamilton County.

LILLIAN RAUH V. SIEBLER TAILORING CO.

Decided May 9, 1933.

*J. G. DeFosset,* and *J. W. O'Hara,* for plaintiff.
*Burns & Friedman,* for defendant.

MATTHEWS, J.

This cause comes before the court upon the plaintiff's motion for a new trial. In my opinion the motion should be overruled and as I set forth at the trial rather fully my views of the issues involved and the law applicable thereto, without, however, citing or quoting the authorities upon which my conclusions were predicated, this opinion will not be extended by a minute analysis of the evidence.

The first issue raised was whether or not the defendant is the same corporation that signed the contract with the plaintiff on November thirtieth, 1929. The name is the same and it is carrying on substantially the same kind of

business in the same place. However, unless the forms of law are to be disregarded, it did not come into existence until after the corporation that signed the contract had been dissolved by decree of court when it was organized by a majority of the stockholders of the dissolved corporation and upon its organization it purchased the assets of the dissolved corporation from its receiver under the order of the court. It borrowed from a bank the money with which to pay for these assets by giving notes signed by its stockholders. The money so raised was paid to the creditors of the dissolved corporation.

Cases involving this general subject are susceptible of division into several classes, each having distinctive features affecting liability. There are the parent and subsidiary corporations, combined, consolidated and merged corporations, and the corporation that has been, in a strict legal sense, re-organized. As I view it this case falls strictly into neither class although in an inartistic sense it might be said to be a re-organization. It is a case of a new and different corporation with new credit supplied by individual stockholders purchasing the assets of a dissolved corporation at a judicial sale. The law applicable to this situation is stated in 15 *Fletcher Cyclopedia Corporations* (Permanent Edition) at page 455, *et seq.*, as follows:

"When a coropration purchases the franchise and property of another corporation, at a sale under a decree foreclosing a mortgage thereon or other judicial sale, or where natural persons purchase at such sale and afterwards transfer to a corporation, the new corporation is not liable for the debts of the old company, provided they are not prior liens on the property, and provided their payment has not been assumed, nor their payment imposed by the foreclosure decree or by statute. So where an individual purchases the assets of a corporation at a foreclosure sale and then resells to a new company composed largely of the members of the company whose assets were sold, and there is no fraud, the new company is not liable for the debts of the old. Use of the property for the construction of which the old company was indebted does not, it has been held, make the new company liable for the debt.

"This principle also applies when a corporation purchases

the property and franchises of another corporation at a sheriff's or marshal's sale, on an execution against the latter and receives a conveyance in pursuance thereof. If the sale is authorized by law, the corporation takes the property free from any liability for existing debts of the other corporation, not secured by prior liens, and from all obligations of the other corporation of a strictly personal character."

Many cases are cited in support of the text.

Counsel for the plaintiff relies strongly upon the case of *Auglaize Box Board Co.,* v. *Hinton, et al.,* 100 O. S., 505.

The salient facts of that case are entirely dissimilar to the facts of the case at bar. There was no purchase at a judicial sale of the assets of a dissolved corporation by a newly organized corporation. In one respect—that is, between the Western Strawboard Co., and the Bloomer Brothers Company—it was a case of one corporation acquiring all the assets of a co-existing corporation including its factory and proceeding to operate the business under the name of the former owner during which Bessie Hinton was injured. There was no doubt as to who her real employer was at the time of her injury and it proceeded to defend the action brought by her against the former owner in whose name only the business was being conducted. Of course, the judgment rendered in her favor was a judgment against the real entity that had defended the action, notwithstanding the name under which it acted was not the name by which it was christened in the articles of incorporation.

In the other respect—that is, as to Auglaize Box Board Co.,—the case presented the spectacle of a debtor—in this case the Western Strawboard Co.,—transferring all of its assets leaving nothing with which to pay its debts to a transferee who had full knowledge of the facts. In this respect it was the ordinary action by a judgment creditor to subject equitable assets.

The other case relied on was *Universal Coal Co.* v. *Old Ben Coal Co.,* 32 O. A. 255. After judgment was rendered against Universal Coal Co., an action was filed on that judgment against it and the Price Hill Colliery Co., at the trial of that case the identity of the two-co-existing corpora-

tions was fully developed. See *Old Ben Coal Corp.,* v. *Universal Coal Sales Co., et al.,* 28 N. P. (N. S.) 563. Judgment was rendered against the Price Hill Colliery Co., and this judgment was affirmed by the Court of Appeals. A reading of the facts will disclose the wide difference between that case and the case at bar.

The conclusion is that in the case at bar the so-called "instrumentality" or "identity" theories that controlled that case are not applicable to the facts in this case.

The second question raised at the trial was whether or not the defendant had adopted this contract or made a new contract embodying the same terms with the plaintiff. The only evidence that is pointed out as having any relevancy to this issue is the testimony of Mr. Rauh that Mr. Siebler while acting as receiver had said that the receivership would make no difference as far as the manufacturing of pants was concerned during the receivership. This is no evidence of an adoption or ratification of a contract by a corporation not then in existence.

This contract being impossible of performance within one year falls within the statute of frauds, and was required to be in writing and signed by the party to be charged. Manifestly the defendant did not sign the original writing and it could not be said to evidence the new contract made after defendant was organized unless something was done to make the writing and the signature the act of the defendant. There is a complete dearth of evidence on that subject.

In 25 R. C. L., p. 666, it is said:

"It is not essential that the signing by the party to be charged be by hand. It may be made by a stamp, typewriter, or printed, if intended, to authenticate the instrument as the act of the party. *But in such case it is essential* that this be done with the *intent to authenticate the contract.*"

See on this subject *Lee* v. *Vaughan's Seed Store,* 101 Ark. 68; 37 L. R. A., (N. S.) 352, and *Brudno* v. *Kohn,* 34 O. A. 133.

There was a sharp conflict in the testimony as to what was said on the subject of the plaintiff continuing to manu-

facture pants. The defendant's witnesses testified that it was not to continue for any definite time. It was agreed that a different price was charged at different times. Under all the circumstances the conclusion was reached that the greater weight of the evidence did not show that the terms of the old contract had been adopted by these parties as their contract, and that no evidence had been introduced showing the adoption by the defendant of the writing and the signature thereto as and for its writing and signature.

The contract between the plaintiff and the dissolved corporation called for the manufacture of pants by the plaintiff from material furnished by the dissolved corporation. It contained no negative covenant.

The contract in effect contemplated that the plaintiff should operate a branch or department of the business. The business was operated on leased premises and the plaintiff was a sub-lessee of the defendant of the space occupied by her, the lease requiring the defendant to furnish light, heat and power to the plaintiff, and the contract requiring the plaintiff to manufacture the pants in a good, workmanlike manner. The relief sought was an injunction requiring the defendant to permit the plaintiff to manufacture all pants, that it be enjoined from allowing any one else to manufacture pants for it, and that it be enjoined from removing its factory from the leased premises and presumably requiring defendant to continue to operate its business and furnishing light, heat, power and space to the plaintiff.

Assuming that the defendant was bound by the contract, it did not seem to me that it was the kind of a contract that a court of equity would specifically enforce. To do so would require that constant supervision over acts of personal labor and skill that equity is inclined not to undertake. The relation is referred to in the contract as an "employment," and although in a legal sense the plaintiff was an independent contractor, the personal character of the relation approximates that of employer and employee. To specifically enforce the contract would require the supervision ordinarily incident to the relation of employer and employee. While I am aware that courts of equity have, in their discretion, assumed the supervision of continuous acts that they would

have declined at an earlier period, I am inclined to the opinion that this contract requires continuous acts of personal skill that the court should decline to oversee.

For these reasons the motion for a new trial is overruled.