# Staunton.

## MINERAL DEVELOPMENT COMPANY v. JAMES & OTHERS.

### SEPTEMBER 14, 1899.

1. CONSTRUCTION OF WRITTEN INSTRUMENTS — *Deeds — Contracts.*—
   Whether an instrument is a deed or merely a contract for a conveyance is a question of intention to be determined from the instrument itself. Words of present grant and assurance create a presumption that an executed conveyance was intended, but this presumption may be overcome by other words in the instrument showing that a future conveyance is contemplated. If, taken as a whole, it appears that a mere agreement for a conveyance was all that was intended, the intent shall prevail, for the intent, and not the words, is the essence of every agreement.

Appeal from a decree of the Circuit Court of Wise county, pronounced April 8, 1898, in a suit in chancery, wherein the appellee James was the complainant, and the appellant and others were the defendants.

*Affirmed.*

This was a suit in chancery for the purpose of having partition of two tracts of land in Wise county, in which the appellee James claimed an interest, which land was in the possession of the Mineral Development Company. The Mineral Development Company claimed to be the owner in fee of both tracts, and denied all interest or estate in James. The Mineral Development Company claimed, through successive conveyances, under two deeds made by J. B. F. Mills, a former owner of the lands. It claimed that it acquired one-half of one tract and seven-twentieths of the other tract under a deed bearing date April 18,

1882, and the remaining one-half of the first tract and thirteen-twentieths of the second tract under a deed bearing date November 7, 1883. These instruments are in the words and figures following, to-wit:

" This indenture, made the eighteenth day of April, in the year of our Lord one thousand eight hundred (and eighteen-hundred) and eighty-two, between J. B. F. Mills and Martha J. Mills, his wife, of the first part, and William D. Jones and Joseph B. Altemus, both of the city of Philadelphia, Pa., of the second part: Witnesseth, that the said party of the first part, for and in consideration of the sum of thirteen hundred and twenty dollars, viz.: $660 cash in hand paid, lawful money of the United States of America, well and truly paid by the said party of the second part to the said party of the first part, at and before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, enfeoffed, released, conveyed and confirmed, and by these presents do grant, bargain, sell, alien, enfeoff, release, convey and confirm unto the said party of the second part, their heirs and assigns, one undivided half interest in the following described lands, to-wit:

" 1. First tract lying near Big Stone Gap, containing about ninety acres, it being the same land on which I now reside, and which land was this day partitioned off to us by the following commissioners, to-wit: J. A. Jones, William Wolfe and John B. Gilly, and for a more perfect description, see their report.

" 2. Second tract lying on the south side of Walden's Ridge, and containing about seven hundred acres, but out of which I only sell one-half of seven-tenths of about six hundred and fifty acres, and adjoining the lands of B. F. Creech, M. V. Kilbourn, Preston and others, and lying about one and three-fourths miles from Big Stone Gap, it being a part of the land partitioned to me by the aforesaid commissioners, and for a more full description see said commissioner's report.

" 3. Third tract lying near Big Stone Gap, adjoining the lands first named, and James Shepherd's, Thomas Davis's and others, containing about fifteen acres, and being a part of the lands which said Mills bought of Lewis and wife.

"4. Fourth tract lies adjoining the last named tract and James Shepherd, Thomas Davis and John Elkins, and for a more perfect description see the deed made by the said John Elkins, Sr., containing about one hundred and fifty acres.

" 5. And one other tract of land lying on the south side of Walden's Ridge, and adjoining the second named tract and William Stewart, L. M. Coyler and John Gilly, containing about five hundred acres, out of which I, the said Mills, only sell one-half of one-half of one undivided half interest therein; to this last named tract the said Mills and wife only gives a special warranty deed. But to all the other tracts named a general warranty deed is to be made. The first named tract is to be estimated at sixteen dollars thereof, the second tract is to be estimated at two dollars per acre; the third tract is to be estimated at two dollars per acre, the fourth tract is to be estimated at one dollar per acre; the last named or special warranty tract is to be estimated at twenty cents per acre, and should said tracts of land, when all are surveyed, show a different amount or number of acres from those named in the foregoing estimate, the amount shall be calculated and the true amount ascertained, and either added to or deducted from the amount of dollars set forth in the foregoing deed, and it is hereby further agreed by and between the parties of the second part and the party of the first part, the said Mills is to occupy said lands free of charge, for the term of one year from this date, and in the event a railroad is not built in one year, said Mills is to occupy said land free of charge until a railroad is built, not to exceed the term of three years from this date, for said Jones and Altemus's interests in said land; together with all and singular the buildings, improvements, woods, ways, rights, liberties, hereditaments and

appurtenances to the same belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and of every part and parcel thereof, and also all real estate, right, title, interest, property, possession, claim and demand whatsoever, both in law and equity of the said party of the first part, of, in and to the said premises with appurtenances, to have and to hold the said premises, with all and singular the appurtenances unto the said party of the second part, their heirs and assigns to the only proper use, benefit and behoof of the said party of the second part, their heirs and assigns forever.

"And the said J. B. F. Mills and Martha J. Mills, his wife, their heirs, executors and administrators, do by these presents covenant, grant and agree to, and with the said party of the second part, their heirs and assigns, that the said J. B. F. Mills and Martha J. Mills, his wife, and their heirs, executors, administrators do, by these presents covenant, grant and agree to and with the said party of the second part, their heirs and assigns, that the said J. B. F. Mills and Mattie J. Mills, his wife, and heirs forever, all and singular the hereditaments and premises hereinbefore described and granted, or mentioned and intended to be so, with the appurtenances, unto the said party of the second part, their heirs and assigns, against us, the said J. B. F. Mills and Martha J. Mills, his wife, and their heirs and against all and every other person or persons whomsoever, lawfully claiming or to claim the same or any part thereof, shall and will warrant and forever defend.

" In witness whereof, the said party of the first part to these presents do hereunto set their hands and seals, dated the day and year first above written.

" J. B. F. MILLS,      [SEAL.] "

" MARTHA J. MILLS.      [SEAL.] "

" This deed, made this the 7th day of November, 1883, by and between John B. F. Mills and Martha J. Mills, his wife, of the first part, who are of the county of Wise and State of Virginia, and William D. Jones and Joseph B. Altemus, of the city of Philadelphia, Penn., of the second part, witnesseth:

" That the said party of the first part, for and in consideration of the sum of sixteen hundred and twenty dollars, principal, lawful money of the United States of America, well and truly paid by the said party of the second part to the said party of the first part, at and before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, enfeoffed, released, conveyed, and affirmed, and by these presents do grant, bargain, sell, alien, enfeoff, release, convey, and affirm unto the said party of the second part, their heirs and assigns, one undivided half interest in the following described three tracts of land, all of which are in Wise county, Virginia, to-wit:

" First tract lying near Big Stone Gap, on the north side of the main road running from Gladeville to Jonesville, and bounded as follows:

" Beginning at a stake in the middle of the aforesaid road, corner to James Graham's land and stake, corner to the Thomas Davis land; thence north 13.8 min., west 83 poles to a stake in the north line of the Preston land; thence with said line S. 54.4 min., west 187 poles to a black gum by the Elk Lick; thence S. 81¾ west 84 poles to a stake in said Preston line, corner to Graham's land, and with the same; thence leaving the Preston line S. 28¼, E. 42 poles to a stake; thence S. 52½ E. 28 poles and 10 links to a stake in the aforesaid main road; thence with said road, and leaving said line north 65½, E. 36 poles to a stake; N. 61, E. 60 poles to a stake; north 64½, E. 36 poles to a stake; thence north 68¼, E. 100 poles to the beginning; containing 90 acres, more or less. The half of which (45 acres, more or less) is hereby conveyed, it being part of the

land which was bought by the party of the first part from James Graham, and it being a part. of the land upon which the party of the first part now resides.

" Second tract adjoining the first on the north, beginning at three white oaks on the Preston line N. 19, W. 80 poles and 13 links to a dogwood in the north line of the George Gilly, deceased, survey; thence with the same S. 74, W. 21 poles to a small locust among rocks; thence leaving said line S. 8, E. 72 poles to a stake in a field; thence N. 54, E. 2 poles to a stake; thence S. 8, E. 20 poles to a stake in the Preston line; thence with said line and with a line of the first named tract N. 54.4 min., E. 39 poles and 15 links to the beginning; containing 15¼ acres, more or less, and it being a part of the land which the party of the first part bought of Lewis and wife, one-half of which is hereby conveyed (7⅝ acres).

" Third tract adjoining second tract on the north, and on south side of Stone Mountain, beginning at a dogwood, corner to second named tract, thence with the line thereof and with the line of the George Gilly survey S. 74, W. 131 poles and 10 links to a chestnut oak in the Colwell line; thence with said line N. ½, W. 159 poles to a stake in the Olinger line near a birch; thence with said line N. 57, E. 34 poles to a chestnut and poplar; thence leaving said S. 78, E. 143 poles to a small hickory, corner to Preston Stidham's and Thomas Davis's land; thence S. 64¼, W. 74 poles and 15 links to a stake; thence S. 19, E. 80 poles to the beginning; containing 114 acres, more or less, one-half of which (57 acres only) is hereby conveyed, it being a part of the land which the parties of the first part bought of John Elkins, Sr., and wife. And part of two other tracts of land lying and being in the county of Wise and State of Virginia, which two tracts are bounded as follows: The first tract beginning at a red oak and black gum on a low spur on the south side of Walden's Ridge in a line of the survey, a part of which is hereby conveyed; S. 10½, E. 20 poles to a chestnut,

sourwood and locust; thence N. 56¼, E. 292 poles to three chest-
nut oaks in a line of Creeche's land; thence with line thereof
N. 37.45 min., E. 110 poles to a maple, small black oak and
chestnut oak; thence N. 72½, W. 146 poles to a chestnut; thence
leaving said Creeche's line N. 88¾, W. 98 poles to a stake in the
Burkholder line in a hollow; thence with said N. 64¼, E. 362
poles to a stake in the Preston line on the pine ridge above
Horton's mill; thence with said line S. 59.22 min., E. 252 poles
to a pine in said line, corner to George Gilly's land; thence
with said Gilly's line S. 2½, W. 178 poles to a birch and poplar
in a line of the land, a part of which is hereby conveyed; thence
S. 50, W. 132 poles to a stake near William H. Stewart's;
thence N. 8¾, E. 140 poles to a stake; thence S. 70½, E. 558
poles to the beginning, containing 642 acres, more or less;
which tract of land was bought by the parties of the first part
from James Graham and wife, and Frank Maggard and wife
and J. H. Blair and wife, who were the heirs of J. C. Wells,
deceased, and this tract of land of which this is a part is known
as the J. C. Wells, deceased, 400-acre tract, it being patented
in his name, but it is distinctly understood that there is only
thirteen-twentieths of the above described boundary hereby
conveyed, 417 acres conveyed.

" The second tract is bounded as follows:

" Beginning at a small birch on the branch that leads from
L. M. Collier's house; thence up the branch N. 55½, W. 120
poles to a maple, now gone, corner to a survey made by Abel
Collier; thence with a line thereof, N. 1½, E. 76 poles to a stake
in said line, and corner to an entry made by Ori G. Collier;
thence N. 41½, E. 144 poles to a bunch of chestnut sprouts and
maple sprouts, another corner to Ori G. Collier; thence N.
8¾, E. 160 poles to a stake, in a road on the top of the pine ridge
that leads off from the dwelling-house of Monroe A. Wells;
thence with the top of said pine ridge N. 55, W. 143 poles to
a stake, in Monroe A. Wells' land; thence S. 86, W. 140 poles

to a large water oak on top of the Elk Knob, beginning corner to a 400-acre survey made by J. C. Wells, deceased; thence with his closing line N. 70½, E. 523 poles to a chestnut oak in said line; thence S. 22, W. 648 poles to the beginning; containing 550 acres, more or less, out of which there is only one-half of one-half interest (137½ acres) hereby conveyed. All of the foregoing tracts herein described we warrant with covenants of general warranty, except the last named, which is warranted specially.

" Together with all and singular the buildings, improvements, woods, ways, rights, liberties, privileges, hereditaments, and appurtenances to the same belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and of every part and parcel thereof, and also all of the estate, right, title, interest, property, possession, claim and demand whatsoever, both in law and in equity, of the said party of the first part of and to the said premises hereby conveyed, with the appurtenances.

" To have and to hold the said premises with all and singular the appurtenances unto the said party of the second part, their heirs and assigns, to the only proper use, benefit and behoof of the said party of the second part, their heirs and assigns forever; and the said J. B. F. Mills and Martha J. Mills, his wife, their heirs, executors and administrators do, by these presents, covenant, grant, and agree to and with the said party of the second part, their heirs and assigns, that we, the said J. B. F. Mills and Martha J. Mills, his wife, and their heirs, all and singular the hereditaments and premises hereinabove described and granted, and intended so to be, with the appurtenances, unto the said party of the second part, their heirs, and against us, the said J. B. F. Mills and Martha J. Mills, his wife, their heirs and assigns, and against all and every other person whomsoever, lawfully claiming or to claim the same or any part thereof.

" In witness whereof the said party of the first part to these presents do hereunto set their hands and seals, dated the day and year first above written.

" Signed and delivered,"

" J. B. F. MILLS,     [SEAL.] "
" M. J. MILLS,        [SEAL.] "

The appellee James claimed that the instrument of April 18, 1882, was a mere contract for a conveyance, and that the deed of November 7, 1883, was the fulfilment of that contract. His own title was deduced from the same J. B. F. Mills. He claimed, through successive conveyances, under a deed from Mills and wife to W. D. Jones, bearing date July 25, 1885, of which the following is a copy:

" This deed, made this 25th day of July, 1885, between J. B. F. Mills and Martha J. Mills, his wife, parties of the first part, and William B. Jones, party of the second part, witnesseth:

" That, whereas, the said J. B. F. Mills heretofore sold and conveyed to William D. Jones and Joseph B. Altemus an undivided half interest in a number of tracts of land and portions of tracts and undivided interests therein, which are described in the deeds of conveyance by the said Mills and wife to the said Jones and Altemus, which are of record in the clerk's office of the County Court of Wise county, to which reference is here made for a further and full description, by which conveyances the said Jones and Altemus became entitled to one moiety of the above recited lands and interests in lands and the said J. B. F. Mills retained the other moiety, and whereas the said J. B. F. Mills has this day sold to the said William D. Jones the entire interest in said lands retained by him under the aforesaid conveyances to Jones and Altemus. Now, therefore, in considera-

tion of the sum of eleven hundred dollars, paid by drafts on Philadelphia, the receipt of which is hereby acknowledged, the said J. B. F. Mills and Martha J. Mills, his wife, do grant unto the said William D. Jones, with covenants of general warranty as to each tract which was conveyed to the said Jones and Altemus, with general warranty, and with special warranty as to the remainder, their entire moiety and interest in all the tracts of land, and undivided portions of tracts of land which they retained and did not convey to the said Jones and Altemus by the deeds of conveyance hereto executed by them, and of record in the clerk's office of the County Court of Wise county, to which and all of which reference is here made for a fuller description of the land and interest in land hereby conveyed, all of which lies in Wise county, Va., near Big Stone Gap. This conveyance includes the land and interest in land which the said Mills owned jointly or in common with the said Jones and Altemus, after the execution of the said conveyance to them, all the title and interest which was retained by the said Mills, being now conveyed to and vested in the said William D. Jones, fully, firmly and complete as it was in the said J. B. F. Mills immediately after the execution of the said conveyances, which are here referred to and not set out for brevity. And the said J. B. F. Mills and Martha J. Mills, his wife, covenant with the said William D. Jones that they have the right to convey the said land to said grantee; that the grantee shall have quiet possession of the said lands, and that they will execute such further assurances of the said lands as may be requisite, and that they have done no act to encumber the said lands. The said J. B. F. Mills reserves to himself the crops raised upon the said lands this year.

" Witness the following signatures and seals: "

" JOHN B. F. MILLS,      [seal.] "

" MARTHA J. MILLS,      [seal.] "

The case turned largely on the proper construction of the instrument dated April 18, 1882. The other facts appear in the opinion of the court.

*H. S. K. Morrison* and *J. H. Fulton,* for the appellant.

*R. T. Irvine,* for the appellee.

RIELY, J.:

The determination of the matter in controversy in this case may be said to depend mainly upon the nature of the instrument of April 18, 1882. If it be not a deed of conveyance but an executory contract, which was fulfilled by the deed of November 7, 1883, there is no error in the decree of the Circuit Court.

The instrument referred to has many of the characteristics of a deed of conveyance. It begins with the words, " This indenture," instead of " This agreement," or " This contract," which are the words generally used, where only a contract is intended. It also contains the operative words of a conveyance, " have granted, bargained, sold   *   *   *   conveyed, and by these presents do grant, bargain, sell   *   *   *   convey," certain interests in the five tracts of land therein described.

In derogation of these characteristics of a conveyance, it specifies that, as " to this last named tract (to-wit, tract No. 5), the said Mills and wife give a special warranty deed, but to all the other tracts named a general warranty deed *is to be made.*" It then concludes with a formal clause of general warranty of the title to all five tracts.

It is a rule of construction that, though a deed may in one part use the formal and apt words of a conveyance, yet if, from other parts of the instrument taken and compared together, it appears that a mere agreement for a conveyance was all that was intended, the intent shall prevail, for the intent, and not the words, is the essence of every agreement. *Jackson* v. *Myers,*

3 Johns. 388; *Jackson* v. *Moncrief*, 5 Wend. 26; *Williams* v. *Paine*, 169 U. S. 55; and *Chapman* v. *Glassell*, 13 Ala. 50; s. c., 48 Amer. Dec. 41.

In *Williams* v. *Payne, supra*, Mr. Justice Peckham, speaking for the court, said: " We agree generally that, although there are words of conveyance *in praesenti* in a contract for the purchase and sale of lands, still if, from the whole instrument, it is manifest that further conveyances were contemplated by the parties, it will be considered an agreement to convey, and not a conveyance. The whole question is one of intention, to be gathered from the instrument itself."

And in a note to the case of *Chapman* v. *Glassell, supra*, p. 45, the learned annotator thus states the law: " Words of present grant or present assurance, such as ' have granted, bargained, sold, aliened, enfeoffed, released, and confirmed,' and words of like import, afford a presumption that an executed conveyance was intended, and that the title passed. But that presumption is not conclusive. Instruments containing these words are to be construed and interpreted the same as other instruments, and the presumption arising from the words themselves may be overcome by the presence in the instrument of other words which contemplate a future conveyance."

Considering the whole of the instrument of April 18, 1882, and applying the recognized rule of construction, I am of opinion that it was only intended as an agreement for the sale of certain lands, and not a deed of conveyance. The words, " but to all the other tracts named a general warranty deed *is to be made*," plainly manifest that the parties contemplated that a future conveyance was to be made.

The instrument of April 18, 1882, affords other evidence, especially when considered in connection with the deed of November 7, 1883, which tends to support this view, and will be briefly adverted to.

The appellant claims title to the lands in controversy through

and under the instrument of April 18, 1882, and through and under the deed of November 7, 1883, and rests its claim thereto upon the contention that the former, as well as the latter, is a deed of conveyance, and that they convey distinct interests in the said lands.

The instrument of April 18, 1882, purports, in the granting part, that J. B. F. Mills and wife convey to W. D. Jones and Joseph B. Altemus, among interests in other lands, one undivided half interest in the " Elkins " tract of land, containing about one hundred and fifty acres, and one-half of seven-tenths of the tract of about six hundred and fifty acres on Walden's Ridge, called the " Wells " patent.

The deed of November 7, 1883, from Mills and wife, conveys to the same parties interests in the same lands, and specifies that it conveys one undivided half interest in the " Elkins " tract of land, containing one hundred and fourteen acres, one-half of which (fifty-seven acres only) is thereby conveyed, and thirteen-twentieths of the tract on Walden's Ridge (the " Wells " patent), containing six hundred and forty-two acres, of which only four hundred and seventeen acres are conveyed.

It thus appears that in the instrument of April 18, 1882, the description of the lands is in very general terms, and the quantity of each tract not accurately stated, but merely said to contain about so many acres.

In the deed of November 7, 1883, these same lands are fully described by metes and bounds, and the acreage of each accurately given. They had then been surveyed, and the " Elkins " tract, which was supposed to contain about one hundred and fifty acres, had been ascertained to contain only one hundred and fourteen acres, and the " Wells " land, instead of six hundred and fifty acres, was found to contain six hundred and forty-two acres.

The original instrument is not in evidence, but it appears from a certified copy thereof, made from the deed book in the

clerk's office of the county court of Wise county and filed in
the record, that though recorded, it was not acknowledged as
is required of deeds of conveyance and other writings that are
intended to be admitted to record, but was simply witnessed
as to J. B. F. Mills, though not as to his wife; while the deed
of November 7, 1883, recites the payment of the purchase
money, was duly acknowledged by the grantors for admission to
record, and recorded.

Moreover, the deed of November 7, 1883, makes not the
slightest reference to the writing of April 18, 1882, but wholly
ignores it. It contains no statement or intimation that the in-
terests conveyed by it are other and additional interests to those
embraced in the instrument of April 18, 1882. If the latter
was intended as a conveyance of the interests therein mentioned,
it would have been most natural to have referred to it in the
deed of November 7, 1883, and specified that the interest
thereby conveyed was the remaining moiety of the "Elkins"
or one hundred and fourteen acre tract, and the remaining
thirteen-twentieths of the "Wells" land. The internal evidence
afforded by this deed tends to confirm the construction that the
instrument of April 18, 1882, was only a contract of sale, and
not a deed of conveyance; that the deed of November 7, 1883,
was in fulfilment thereof; and that the interests it conveys, to
the extent that they are specified in the earlier instrument, are
the same. The only difference between them, as respects the
lands in controversy, is that the writing of April 18, 1882, only
specifies a sale of one-half of seven-tenths of the "Wells" land,
which is seven-twentieths thereof, while the deed of November
7, 1883, conveys thirteen-twentieths.

It appears from the record that Wells left five children, to
whom the said land descended. Prior to April, 1882, Mills had
bought from two of the children their interests, and from James
Graham, who had become the owner of the other three interests,
an undivided half thereof, thus making Mills the owner on April

18, 1882, of an undivided seven-tenths, of which he sold one-half to W. D. Jones and Joseph B. Altemus by the writing of that date. Subsequently, and prior to November 7, 1883, Mills acquired from Graham his remaining interest in the "Wells" land, amounting to six-twentieths, which, added to the seven-twentieths specified in the writing of April 18, 1882, makes the thirteen-twentieths conveyed in the deed of November 7, 1883, and left him as owner of the remaining seven-twentieths of the "Wells" land, and an undivided half interest of the one hundred and fourteen acres, or "Elkins" tract.

The subsequent conveyances under which the appellant claims title to the lands in controversy also tend to confirm the construction that the instrument of April 18, 1882, was only intended by the parties as an agreement of sale, and not a deed of conveyance.

On December 27, 1883, only a few weeks after the deed of November 7, 1883, from Mills to Jones and Altemus, and while these transactions were fresh in their minds, Jones conveyed to Altemus, Benson, and McGeorge, through whom the appellant claims, his undivided half of the interest of Altemus and himself in the one hundred and fourteen acre tract and his undivided half interest of thirteen-twentieths of the "Wells" land. It is significant that he refers alone for a description of the lands, in which interests are conveyed by him, to the deed of November 7, 1883, and makes no reference whatever to the instrument of April 18, 1882, which would have been equally necessary and appropriate, if it had been a conveyance of the interests specified therein, and not merely a contract of sale.

Altemus was one of the grantees in this deed, and the half owner with Jones of the interests in lands thereby conveyed; and if they had acquired from Mills any greater interest than that whereof Jones was purporting to convey an undivided half, he would certainly have required Jones to include his full one-half of the interests owned by them.

And in the immediate deed to the appellant, of October 1, 1892, under which it claims the lands in controversy, and in which Joseph B. Altemus was one of the grantors, the interests conveyed are decribed as being " twice the amount conveyed by the said William D. Jones and wife " to Altemus, Benson, and McGeorge; " that is to say, all the estate, right, title, and interest of the said Joseph B. Altemus and William D. Jones," in and to said lands.

It thus satisfactorily appears to my mind that the appellant is the owner of only an undivided thirteenth-twentieths of the " Wells " land, and a moiety of the one hundred and fourteen acre, or " Elkins " tract, and that Mills, on July 25, 1885, was the owner of the other moiety of the " Elkins " tract, and the remaining seven-twentieths of the " Wells " land, when he conveyed the same by deed of that date to William D. Jones, who, by the deed of September 8, 1889, conveyed the same to the appellee.

I am of opinion, for the foregoing reasons, that there is no error in the decree of the Circuit Court, and the same must be affirmed.

The other judges concur in the opinion of RIELY, J.

*Affirmed.*