Staunton.

SUTHERLAND AND OTHERS V. MUNSEY AND OTHERS.

September 11, 1916.

1. DEEDS—*Doubtful Instruments—Intention.*—Whether a written instrument is a deed of conveyance or a contract for the purchase and sale of land is to be determined by the intention of the parties as gathered from the instrument itself. Though a deed may in one part use the formal and apt words of a conveyance, yet if, from other parts of the instrument taken and compared together, it appears that a mere agreement for a conveyance was all that was intended, the intent shall prevail, for the intent, and not the words, is the essence of every agreement. The whole question is one of intention, to be gathered from the instrument itself.

2. STATUTE OF FRAUDS—*Signing—Authentication—Intention.*—A memorandum may be signed, within the meaning of the statute of frauds, by writing the name anywhere in the instrument, whether at the top, in the middle or at the bottom thereof, but wherever the name be placed, it must appear to have been done with the intention of authenticating the instrument and not for some other purpose, for a signing consists of both the act of writing a person's name and the intention in doing this, to execute and authenticate the instrument signed.

3. STATUTE OF FRAUDS—*Writing the Instrument—Signature—Authentication—Identification.*—The mere writing by a proposed purchaser of an agreement for the sale and purchase of real estate, containing the names of the parties at the beginning, but not otherwise signed by the purchaser, is not a signing by such purchaser within the meaning of the statute of frauds. The writing of the name in that connection is merely for the purpose of identification, and not for authentication.

Appeal from a decree of the Circuit Court of Russell county. Decree for the defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*W. W. Bird,* for the appellants.

*Burns & Kelly* and *S. B. Quillen*, for the appellees.

Harrison, J., delivered the opinion of the court.

This case was decided in the circuit court upon a demurrer to appellants' amended bill.    The instrument upon which the suit is based is as follows:

"This agreement made and entered into this the 18 day of August, 1910, by and between Lafayette Sutherland, *Virginia*, and Mary G. Sutherland, his wife of the county of Russell and State of Virginia, parties of the first part, and J. G. Muncy and H. Hardaway of Russell & Wise Co., Va. as parties of the second part. Witnesseth, that for and in consideration of ten dollars cash in hand paid by the parties of the second part to the parties of the first part, receipt whereof is hereby acknowledged the further consideration of $990.00 Nine Hundred and ninety Dollars to be paid on the Delivery of a Deed to the property herein described and three thousand dollars to be paid in three equal installments in one, two and three years from and after the date of deed the parties of the first part has this day bargained and sold and by these presents doth grant bargain and sell and convey with covenants of general warrantee Deed title to free from all encumbrances all that certain tract of land which is bounded as follows, to-wit a one eight interest in the Alexander Sutherland tract of land lying in Russell County and State of Virginia and on Millstone Branch of Dumps Creek being the same partitioned by John Sutherland and others and divided by Commissioners appointed by the Circuit Court of Russell Co. and said commissioners allotted to the said part*ie* Lot Number two but not confirmed by the Court and it is agreed by all parties to this agreement that as soon as the said allot-

ment can be confirmed by the Court to the said first part*ie* and the said allotment conveyed by deed as above stated then the second party will pay the $990.00 Dollars execute three notes of one thousand Dollars Each bearing interest at the rate of six per cent. from Date on one, two and three years retaining in said Deed a Vendor's Lien to secure the unpaid purchase money and the said first parties will have the right to collect the interest on said notes every five months given under my hand and seal the day and .........
first above written.

his<br>
"LAFAYETTE    X    SUTHERLAND    (Seal)<br>
mark

her<br>
"MARY    X    G. SUTHERLAND        (Seal)"<br>
mark

In their original bill, which was demurred to, appellants treat the instrument sued on as a contract and ask for its specific performance. In their amended bill, while not abandoning entirely the theory that it is a contract, they contend that it is a deed, and ask that the purchase money be enforced as under a vendor's lien. The further prayer is made, "that, if the court should be of the opinion that the said contract as it is called is not a complete deed of conveyance but a contract of sale and purchase of said property, in that event, it enforce performance of such contract against the said Munsey and Hardaway by decreeing a sale of said land, and the application of the proceeds to the unpaid purchase money due complainants," etc.

Four grounds of demurrer to this amended bill were relied on. The first three go to the same proposition

—the defense of the statute of frauds. Following the example of counsel for both parties, we will consider first the fourth ground of demurrer, which involves the question whether or not the instrument sued on is a deed of conveyance of title, or a contract.

In the case of *Mineral Development Co.* v. *James*, 97 Va. 403, 34 S. E. 37, there was construed an instrument, the terms of which, so far as they affect the question now under consideration, were practically the same as the corresponding terms of the instrument before us, the only difference of importance being that the instrument in the case mentioned was more like a deed than that now before the court, in this, that it begins with the words, "This indenture," while the instrument in this case begins, "This agreement." In both cases the instrument contains operative words of conveyance, in almost identical language, but in both cases there are further words showing an intention to make a future conveyance. In construing the instrument in the *James Case, supra,* Judge Riely, speaking for this court, says: "The instrument referred to has many of the characteristics of a deed of conveyance. It begins with the words, 'This indenture,' instead of 'This agreement,' or 'This contract,' which are the words generally used, where only a contract is intended. It also contains the operative words of a conveyance, 'have granted, bargained, sold . . conveyed, and by these presents do grant, bargain, sell . . . convey,' certain interests in the five tracts of land therein described. In derogation of these characteristics of a conveyance, it specifies that, as 'to this last named tract (to-wit, tract No. 5), the said Mills and wife give a special warranty deed, but to all the other tracts named a general warranty deed *is to be made.*' It then concludes with a formal clause of

general warranty of title to all five tracts.

"It is a rule of construction that, though a deed may in one part use the formal and apt words of a conveyance, yet if, from other parts of the instrument taken and compared together, it appears that a mere agreement for a conveyance was all that was intended, the intent shall prevail, for the intent, and not the words, is the essence of every agreement. *Jackson* v. *Myers*, 3 Johns. (N. Y.) 388, [3 Am. Dec. 504]; *Jackson* v. *Moncrief*, 5 Wend. [N. Y.] 26; *Williams* v. *Paine*, 169 U. S. 55 [18 Sup. Ct. 279, 42 L. Ed. 658]; and *Chapman* v. *Glassell*, 13 Ala. 50; s. c. 48 Amer. Dec. 41.

"In *Williams* v. *Paine*, *supra*, Mr. Justice Peckham, speaking for the court, said: 'We agree generally that, although there are words of conveyance *in praesenti* in a contract for the purchase and sale of lands, still if, from the whole instrument, it is manifest that further conveyances were contemplated by the parties, it will be considered an agreement to convey, and not a conveyance. The whole question is one of intention, to be gathered from the instrument itself.'

"And in a note to the case of *Chapman* v. *Glassell*, *supra*, 48 Am. Dec. 45, p. 45, the learned annotator thus states the law: 'Words of present grant or present assurance, such as 'have granted, bargained, sold, aliened, *enfeoffed*, released, and confirmed,' and words of like import, afford a presumption that an executed conveyance was intended, and that the title passed. But that presumption is not conclusive. Instruments containing these words are to be construed and interpreted the same as other instruments, and the presumption arising from the words themselves may be overcome by the presence in the instrument of other words which contemplate a future conveyance.' "

"Considering the whole of the instrument of April 18, 1882, and applying the recognized rule of construction, I am of opinion that it was only intended as an agreement for the sale of certain lands, and not a deed of conveyance. The words, 'but to all the other tracts named a general warranty deed *is to be made*,' plainly manifest that the parties contemplated that a future conveyance was to be made."

This decision is conclusive of the question under consideration in the present case, where the instrument shows clearly that a future conveyance was contemplated by the parties. This makes the instrument a contract and not a deed, and limits the plaintiffs' relief in this case to the specific performance of the contract, which performance cannot be enforced unless the contract complies with the requirements of the statute of frauds.

The question whether or not the instrument involved in this case was signed by the appellees in such manner as to make the signing valid in view of the statute of frauds is raised by the first, second and third grounds of demurrer.

There seems to be no question that the name may be signed by writing it anywhere in the contract, but wherever placed it must appear to have been done with the intention of authenticating the instrument and not for some other purpose, for a signing consists of both the act of writing a person's name and the intention, in doing this, to execute and authenticate the instrument signed.

In Words and Phrases, Vol. 7, p. 6509, it is said: "A signature, according to Greenleaf, consists both of the act of writing the party's name and of the intention of thereby finally authenticating the instrument," citing numerous authorities.

The necessity for the intention accompanying the name is expressed in 20 Cyc. 274, as follows: "The signing required by the statute is a signature to the memorandum placed there with the intention of authenticating the writing. If placed with this intention the signature may occur at the beginning of the memorandum, in the body thereof, or in the place designated for the witnesses' signature."

In 29 Am. & Eng. Enc. of Law, p. 856, the rule is stated as follows: "When the statute requires the memorandum to be 'signed,' it is immaterial in what part of the instrument the name of the party appears, whether at the top, in the middle, or at the bottom thereof, if applicable to the whole substance of the agreement, and written by the party or by his authority with the intention of thereby executing the same as a binding obligation."

In *Lee* v. *Vaughan*, 101 Ark. 68, 141 S. W. 496, 37 L. R. A. (N. S.) 352, quoting from Browne on Statute of Frauds, it is said: "In regard to the place of the signature, there is no restriction. It may be at the top or in the body of the memorandum, as well as at the foot . . . But the same besides being in his handwriting must always be inserted in such a manner as to authenticate the instrument as the act of the party executing it, or, in other words, to show the intention of the party to admit his liability upon the contract. The mere insertion of his name in the body of an instrument, where it is applicable to a particular purpose, will not constitute a signature, within the meaning of the statute."

In Minor on Real Property, vol. 2, sec. 1289, the author says: "Although the terms of the contract be set out in writing ever so plainly, and be ever so solemnly assented to, yet if it be not signed it does not

avail under the statute; and the fact that the party's agent, or even the party himself, wrote the contract, does not necessarily make his name appearing therein a sufficient signing, unless *it appears* that the writing contains the terms of final agreement, *and that the name was designed as a signature.* There is no particular place which the name must occupy in order to constitute it a signature; nor is it necessarily the sign manual of the party or of his agent. It is enough if it be affixed in the presence and by the direction of the party himself, or his agent, as the case may be; and may be at the beginning, or the end, or in the middle, *provided only the collocation and connection be such as to authenticate the whole instrument."*

Looking to the instrument involved in this case, we find that, taking the amended bill as true, the paper is in the handwriting of the appellee, J. G. Munsey, and his name, with that of H. Hardaway, his principal, was written in it by him. The only place where the names of appellees appear is near the beginning of the contract, the first few lines of which are as follows: "This agreement made and entered into this the 18 day of August, 1910, by and between Lafayette Sutherland, Virginia, and Mary G. Sutherland, his wife of the county of Russell and State of Virginia parties of the first part and J. G. Munsey and H. Hardaway of Russell & Wise Co. Va., as parties of the second part. Witnesseth that for and in consideration," etc. It is, we think, clear that the names of the appellees, in the connection in which we find them, were not designed as signatures, nor written there for the purpose of authenticating the instrument, but were written in that connection for an entirely different purpose— that of identification. The language is in the usual form of introduction to such an instrument, and the

entire instrument, including the location of the names of all the parties is in the usual form—the form that would have been used had the paper been drawn tentatively without the intention of signing it. It was necessary to identify the parties to this instrument, and the names of the appellees appear with the names of all the parties, in that portion of the instrument where the names of the parties are usually mentioned for the purpose of identification. If the language used had been introduced with the express statement that it was to identify the parties, it would not be more clear than it is that such was its purpose.

The writing of the names of the appellees in the instrument in question being for the purpose of identifying them and not with the purpose of thereby signing and authenticating the instrument, it is clear, in the light of the authorities cited, that the instrument sued on has not been signed by the parties to be charged in such manner that it can be enforced in the face of the inhibition of the statute of frauds.

There is no error in the decree appealed from and it must be affirmed.

*Affirmed.*