MESIBOV, GLINERT & LEVY, INC., Appellant, *v.* COHEN BROTHERS MANUFACTURING Co., INC., Respondent.

Contract — sale — Statute of Frauds — printed name in heading to order form not treated as signature where it plainly appears separate signature was required for acceptance — insufficiency of unsigned order form to satisfy Statute of Frauds — sufficiency of description of goods sold — memorandum expressing sense of agreement not condemned for failure to reproduce words.

1. Assuming that a printed name in a heading to an order form will be treated as a signature if the setting of the occasion gives fair warrant for the inference that it was so intended or adopted, the imputation of such a meaning is not permissible where beneath the printed heading is the buyer's order for the goods; beneath the order is a form wherein the seller accepts the order according to its terms and beneath this is the printed word " accepted " with a dotted line intended for the signature of the seller, the acceptor, but the name is not added.   A memorandum so phrased leaves no basis for the inference, in the absence of other evidence of intention, that the printed heading was adopted as a recognition of the contract.   It shows upon its face that the seller was unwilling to accredit the

20

contract as its own without another signature, separate from the heading, to be placed as a token of validity in a space specially reserved, and this conclusion is reinforced where the name on the order blank was not that of the seller but of a partnership to which it had succeeded. Such a memorandum is, therefore, insufficient to satisfy the requirements of subdivision 1 of section 85 of the Personal Property Law requiring that " the contract " or some note or memorandum " thereof shall be signed by the party to be charged or his agent in that behalf."

2. An objection, however, that the memorandum is inadequate in its description of the goods alleged to have been sold, which comes in varying widths and weights, because it does not state the widths and weights to be delivered, cannot be sustained where there is evidence that there are standard widths and weights which, by usage of the market, will be taken as intended when the writing is silent. The memorandum was for the use of merchants, and the meaning that the description would have conveyed to them, when they came to read what had been written in the light of the usage of their business, is the meaning to be ascribed to it when scrutinized by courts.

3. An argument that the buyer in the talk leading up to the written memorandum had stated he wished to buy some more of the same quality of a cloth that had been supplied him before and that the memorandum is an incomplete statement of the true agreement in that it fails to identify the subject-matter of the new deliveries with that of the old, cannot be upheld where the goods previously supplied were of standard widths and weights. A memorandum expressing the sense of the preliminary agreement is not to be condemned as inadequate for a failure to reproduce the words, unless reproduction of the words was a condition of the bargain. (*Berman Stores Co.* v. *Hirsh*, 240 N. Y. 209, distinguished.)

*Mesibov, Glinert & Levy* v. *Cohen Brothers Mfg. Co.*, 218 App. Div. 142, affirmed.

(Argued May 16, 1927; decided May 31, 1927.)

Appeal from a judgment, entered December 17, 1926, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

*I. Maurice Wormser* and *I. Gainsburg* for appellant. The memorandum which the Statute of Frauds requires,

like any other memorandum, must be read in the light of reason. It is complete and sufficient for all purposes of trade between merchants. Its description of the merchandise as " 2,000 lbs. raw trico cloth " sufficiently identifies the merchandise, because there is ample proof of custom and usage upon the trial of this case which would supply the width and weight of the goods. (*Doherty v. Hill,* 144 Mass. 465; *Gumbinsky Bros. Co. v. Smalley,* 203 App. Div. 661; 235 N. Y. 619; *Nicoll v. Pittsvein Coal Co.,* 269 Fed. Rep. 968; *Oswego Falls Pulp & Paper Co. v. Stecher Lithographic Co.,* 215 N. Y. 98; *Burton v. Jennings,* 185 Fed. Rep. 382; *Shoyer v. Wright-Ginsberg Co.,* 240 N. Y. 223; *De Veso v. Chandler,* 210 App. Div. 684; *Dana v. Fiedler,* 12 N. Y. 40; *Wright v. Weeks,* ·25 N. Y. 153; *Flash v. Rossiter,* 116 App. Div. 880; *Marks v. Cowdin,* 226 N. Y. 138.) The memorandum contained a sufficient signature. It thoroughly identified the seller. The evidence establishes beyond doubt that the defendant corporation, Cohen Bros. Manufacturing Company, adopted the name of the partnership of Cohen Brothers, its immediate predecessor and in which the same persons were interested, for all purposes of this transaction. (*Cohen v. Wolgel,* 107 Misc. Rep. 505; 191 App. Div. 883; *Cohen v. Walker & Co.,* 192 N. Y. Supp. 228; *Pearlberg v. Levisohn,* 112 Misc. Rep. 95; *Merritt v. Clason,* 12 Johns. 102; *James v. Patten,* 6 N. Y. 9; Williston on Contracts, § 585.)

*Samuel Seabury, Nathan Friedman* and *George Trosk* for respondent. Plaintiff claims that there was an express, independent, contemporaneous oral agreement governing the " kind " and " quality " of tricolette to be delivered to it under the writing upon which it sues. In these circumstances, the omission of these descriptive terms could not be supplied by evidence of a custom which fixes them in cases where no agreement on the subject is made, because when there is an express agreement on

a subject it must be embodied in the writing and extrinsic evidence thereof will not be received, even though the express agreement be to the same effect as the custom would have supplied if no agreement on the subject had been made. (*Berman* v. *Hirsh*, 240 N. Y. 209; *Nicoll* v. *Pittsvein Coal Co.*, 269 Fed. Rep. 968.) The name of the defendant, " Cohen Brothers Manufacturing Co., Inc.," does not appear on the memorandum upon which plaintiff sues. The only name which appears on it is the printed name " Cohen Brothers " at the top. Cohen Brothers was a partnership entirely independent of Cohen Brothers Manufacturing Co., Inc. Since the defendant's name does not appear on the writing, it is insufficient, under the Statute of Frauds, to support an action against the defendant. (*Berkley* v. *Third Avenue Ry. Co.*, 244 N. Y. 84; *Galin Co.* v. *Newhouse*, 110 Misc. Rep. 680.)

CARDOZO, Ch. J. Plaintiff, wishing to purchase 2,000 pounds of tricolette, received from the defendant the following memorandum:

" Acknowledged                    Date *June* 28, 1919
                " COHEN BROTHERS
            " The Leading Sweater House
    " 16–18–20 West 32nd Street, New York
                        All contracts subject to
                        strikes, accidents and other
                        unavoidable causes

Sweaters, Fancy Knit Goods

                        All    goods    sold    and
            MILLS          shipped F. O. B. the Mills.
    Cleveland, Ohio        Salesman
    Brooklyn, N. Y.
    Philadelphia, Pa.
    West New York, N. J.    Filled by
                            Chg'd by
                            Date

Make for Mesibov, Glinert
  & Levy Ship to 104 W.   When
  27th St.               Via N. Y. City
                       30 32 34 36 38 Terms Price
                       40 42 44 46
No.: Style No.: Quantity:  12 14 16 18 20
  Ck: Color:           22 24 26 28        9.50
                                       a lb
  2000 lbs. Raw Trico Cloth           Net
                                  10 days
                Delivery Sept and Oct.
            No countermands accepted.
  " NOTICE.— We hereby agree to accept above order in
detail as given and no changes can be made in same
unless COHEN BROS. are notified within 10 days from
date order is placed.

  " To facilitate matters this order will be shipped ' As
ready for express ' unless otherwise specified on order.
We do not prepay express charges and make no express
charge allowance unless shipment of merchandise is routed
contrary to written instructions on this order.   No goods
will be taken back, unless damaged.   We ship no goods
on consignment.  " Accepted...................."

The memorandum was written on a printed order form.
The name Cohen Bros. printed in the heading and in the
body of the form is that of a partnership to whose business
the defendant, Cohen Brothers Manufacturing Co., Inc.,
had recently succeeded.   The plaintiff says that the
memorandum was delivered by the defendant with intent
to close a contract by the acceptance of an order.   The
defendant says that it was delivered without contractual
intent, and as a memorandum of inquiries to be submitted
to the mill.   The question is whether the memorandum
satisfies the requirements of the Statute of Frauds (Pers.
Prop. Law, § 85; Consol. Laws, ch. 41).   Criticism is
directed to two features of the writing.   One is the

signature. The other is the description. The two grounds of criticism will be considered in succession.

(1) " The contract," or " some note or memorandum " thereof, shall be " signed by the party to be charged or his agent in that behalf " (Pers. Prop. Law, § 85, subd. 1). There is no longer a requirement that the writing be " subscribed " (*James* v. *Patten*, 6 N. Y. 9). It may be signed at any place, at the top or in the body. A signature, however, there must be, and a name, written or printed, is not to be reckoned as a signature unless inserted or adopted with an intent, actual or apparent, to authenticate the writing (1 Williston, Sales, § 112; Anson, Contracts [Corbin's ed.], p. 106; Benjamin on Sales [6th ed.], p. 308; Browne, Statute of Frauds, § 357). Whether such an intent is to be inferred will be at times a question of law and at others one of fact, according to the circumstances. Thus, a signature is adequate if the party to be charged writes the letters " O.K." in the margin or at the top and adds thereto his name either in full or by initials. A signature is adequate if a letter is written in the third person: "Mr. Stanley begs to inform [the plaintiffs] that he will take an early opportunity of settling their accounts " (*Lobb* v. *Stanley*, 1844, 5 Q. B. [Ad. & Ellis N. S.] 574). The same result has been reached in other cases where intention was more dubious (Benjamin, *supra*, p. 306). The decisions are conflicting whether the name of a seller in the printed heading of a billhead or an order blank is a signing without more. Such a signing was held adequate in *Cohen* v. *Wolgel* (107 Misc. Rep. 505; 191 App. Div. 883); in *Pearlberg* v. *Levisohn* (112 Misc. Rep. 95), and in *Drury* v. *Young* (58 Md. 546), but inadequate in *Lee* v. *Vaughan's Seed Store* (101 Ark. 68), and in *Sutherland* v. *Munsey* (119 Va. 791).

We assume for present purposes that a printed name in such a heading will be treated as a signature if the setting of the occasion gives fair warrant for the inference that it was so intended or adopted. The assumption

does not carry us far toward the solution of our problem.
The difficulty here is that the imputation of such a meaning
to the parties now before us is overcome by tokens of
intention too strong to be resisted.   Beneath the printed
heading is the buyer's order for the goods.   Beneath the
order is a form wherein the seller accepts the order
according to its terms.   Beneath this is the printed word
" accepted " with a dotted line intended for the signature
of the seller, the acceptor.   The name was never added.

A memorandum so phrased leaves no basis for the
inference, in the absence at all events of other evidence
of intention, that the printed heading was adopted as a
recognition of the contract.   The form shows upon its
face that the seller was unwilling to accredit the contract
as its own without another signature, separate from the
heading, to be placed as a token of validity in a space
specially reserved.   Even in the English courts, where
the rule, it seems, is laxer than with us (Williston, *supra*,
§ 112), a signature thus disowned would not satisfy the
statute..   Thus, in *Hubert* v. *Treherne* (3 M. & G. 743)
the names of the parties were written in the body of the
document, but at the end were the words " as witness
our hands," without other authentication.   " These words
evidently shew that the names of the contracting parties
were meant to be subscribed, and that it was not intended
that the insertion of the names in the body of the instru-
ment should operate by way of signature " (per TINDAL,
C. J., at p. 754; cf. *Hucklesby* v. *Hook*, 82 L. T. 117, and
cases there cited; Benjamin on Sales, *supra*).   We may,
indeed, infer from the delivery of the writing that the
defendant intended to assume the obligation of a con-
tract, whether the document was signed or unsigned.
It might have intended as much if there had been no
writing whatever.   It may even have supposed that a
writing was unnecessary.   Something more must be found
before the statutory requirements can be held to be
obeyed.   The defendant must have intended not merely

to contract, but to sign. We see no mark of such a purpose.

.The conclusion thus reached is reinforced by other circumstances, if reinforcement be important. The name used in the order blank is not the defendant's name at all. It is the name of a partnership to which the defendant has succeeded. We do not mean that this circumstance, standing alone, would be decisive. If the writing had been signed at the appropriate place, the inference might be permissible that the name had been adopted for the occasion as an informal or abbreviated description of the corporation, just as if the corporation had been designated by the use of its initials. The partnership was no longer in existence, and there is no pretense that the defendant's officers were contracting in behalf of a firm that was extinct. Even so, the use of such a form puts a new strain upon the argument that the heading was adopted as equivalent to a signature. The inference must rather be that the blanks were made use of as a convenient scratch-pad, without thought that they contained a signature, or that signature was necessary.

(2) We pass to a second objection to the note or memorandum. The one already considered is sufficient to sustain the judgment. The second, however, was chosen by the Appellate Division as the basis of its opinion, in misconception, we think, of the effect of our decisions. Our silence might tend to perpetuate the error.

The memorandum is said to be inadequate in its description of the goods that are to be the subject of the contract. Trico cloth, or more properly tricolette, comes in varying widths and weights. The memorandum does not state the widths and weights to be delivered. There might be force in this criticism if the omission were not supplied by the usage of the market. Evidence is in the record that there are standard widths and weights which will be taken to be those intended when the writing is silent as to the delivery of others. A witness for the defend-

ant admits that this is true of widths, though he qualifies his earlier testimony by denying that it is true of weights. On the other hand, there are witnesses for the plaintiff who tell us that it is true of widths and weights alike. If this is so, the goods have been " sufficiently described for reasonable identification " (1 Williston, Sales, § 105-b, p. 198). The memorandum was for the use of merchants. The meaning that the description would have conveyed to them, when they came to read what had been written in the light of the usage of their business, is the meaning to be ascribed to it when scrutinized by courts (*Gumbinsky Bros. Co.* v. *Smalley*, 203 App. Div. 661; 235 N. Y. 619; *Nicoll* v. *Pittsvein Coal Co.*, 269 Fed. Rep. 968). The statute does not abrogate the settled canons of construction that apply to contracts generally (*Marks* v. *Cowdin*, 226 N. Y. 138, 144; *Argus Co.* v. *Mayor*, 55 N. Y. 495, 504; Williston, Sales, § 104, and cases there cited).

Stress is laid by the defendant upon a statement by the plaintiff's agent in the talk that led up to the written memorandum. He said in entering the defendant's office that he wished to buy some more of the same quality of tricolette that had been supplied to him before. The argument is made that the memorandum is an incomplete record of the true agreement between the parties in that it fails to identify the subject-matter of the new deliveries with the subject-matter of the old ones (1 Williston, Sales, § 104). We do not overlook the difference in this connection between a contract in writing, and a note or memorandum of a contract. The one is subject to the parol evidence rule; the other may be shown by parol to be inaccurate or incomplete (Williston, *supra*, § 100; Benjamin on Sales [6th ed.], pp. 264, 267, and cases there cited; *Juilliard* v. *Trokie*, 139 App. Div. 530, 533; 203 N. Y. 604; *Mandel* v. *Guardian Holding Co., Inc.*, 200 App. Div. 767, 769, 770; 234 N. Y. 564). But the goods previously supplied were goods of standard widths and weights. The memorandum did not introduce a variance

from the conditions of the order. It put in other words the same thought that would have been expressed if it had identified the new sales by reference to the old ones. A different question would be here if some particular form of expression had been bargained for in advance as an essential term of the agreement. Nothing in the situation justifies an inference that such a bargain was intended. What was said by the plaintiff's agent was merely introductory and preliminary. Indeed, the defendant's argument, if accepted, would lead to the conclusion that the memorandum would be inadequate though it had expressly enumerated the widths and weights to be delivered unless it joined to this a statement that widths and weights were to be identical with those supplied before. Neither reason nor authority constrains to such a ruling. A memorandum expressing the sense of the preliminary agreement is not to be condemned as inadequate for a failure to reproduce the words, unless reproduction of the words was a condition of the bargain. Nothing to the contrary was held in *Berman Stores Co.* v. *Hirsh* (240 N. Y. 209). There the parties had agreed upon a determinate date for the delivery of goods. The memorandum was silent as to this branch of the agreement with the result that delivery might have been made within the flexible and fluctuating limits of a reasonable time (cf. Williston, *supra*, § 104, p. 190). What was written was not fairly the equivalent of what was said. Here equivalence is made out by the usage of the business as soon as usage is established. Equivalence existing, the parties were not insistent that the expression should be in one form to the exclusion of another.

We conclude that the first objection to the writing must be upheld and the second overruled.

The judgment should be affirmed with costs.

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment affirmed, etc.