RHEA T. McTAGUE, Plaintiff, *v.* JAMES J. CONROY, Defendant.

Supreme Court, Kings County, December 20, 1928.

*Cady, Schapiro & Schapiro* [*Harold Wisan* of counsel], for the plaintiff.

*Meier Steinbrink*, for the defendant.

LEWIS, J.   The complaint sufficiently alleges the breach of an agreement on the part of the defendant to accept title and seeks to recover damages therefor.   The memorandum sued upon is an enforcible agreement.   It sets forth a description of the property, the payment of $5,000 on account of the purchase price, $10,000 on the signing of the contract, $21,000 by taking the property subject to existing mortgages for that amount, $22,750 by a purchase-money mortgage for three years, " to be drawn in the usual way and under the usual conditions.   Made by the purchaser or assigns," and the balance of $34,250 in cash or by certified check.

Provision is also made that title is to be closed on September 1, 1925, and for the place of closing.   The agreement is no less a contract because the parties contemplated the execution of a more formal instrument.   (*Sanders* v. *Pottlitzer Bros. Fruit Co.*, 144 N. Y. 209.)   The Statute of Frauds is not set forth as a defense and in any event the defense of the statute is only available to a vendor. (*Quinto* v. *Alexander*, 123 App. Div. 1; *Brune* v. *Vom Lehn*, 112 Misc. 342; affd., 196 App. Div. 907.)   *300 West End Ave. Corp.* v. *Warner* (223 App. Div. 267)* is to the contrary but the weight of authority in this department is opposed to the views expressed by the majority opinion.

The defendant in his brief, submitted after trial, claims for the first time that the phrase in the agreement, " the purchase money mortgage is to be drawn in the usual way and under the usual conditions," renders the agreement indefinite and insufficient.   The actual words used, *drawn, way* and *conditions*, are matters of import. They differ from the words in the phrases considered in *Elterman* v. *Hyman* (192 N. Y. 113) and *Goldberg* v. *Norek* (101 Misc. 371). In those cases the expressions clearly had reference to what was to be contained in the mortgage as to its substantive clauses of terms and conditions.   In the instant case the expression has no clear reference as to what was to be contained in the mortgage and it is likely refers merely to the manual or mechanical way and conditions of the drawing or draftsmanship of the mortgage, *e. g.*, the practical or customary way of the seller's attorney drawing the papers under condition of the buyer paying the scrivener's

---

* Affd., 250 N. Y. 221.

fee. If, however, it be assumed that the phrase did contemplate the clauses of terms and conditions, then having in mind that the contract stated the amount of the purchase-money mortgage, that it was to run for three years with legal rate of interest implied, and was to be made or executed by the purchaser, it is obvious that all that was left was the scrivener's task of putting these substantive terms into legal form, and thus the phrase has no more indefiniteness or uncertainty than has the common stipulation for a formal contract of sale to express the agreed terms. The statutory form of the mortgage (Real Prop. Law, § 258) would satisfy these terms. If more was intended there does not appear to have been any discussion of possible differences at the time.

The defendant suggests, in a tentative way, that the phrase may have had reference to the amortization of the mortgage. Had there been discussion at the time of the contract as to whether there was to be an amortization clause, or if it was on the trial contended that such a clause was usual, it would have been competent to show it as a fact (*Goldberg* v. *Norek, supra; Mesibov, Glinert & Levy, Inc.,* v. *Cohen Bros. Mfg. Co.,* 245 N. Y. 305), but it cannot be held that an amortization clause or what amortization clause is usual as matter of law. (Cases *supra,* and *Ansorge* v. *Belfer,* 248 N. Y. 145.) And that amortization was not intended is decisively evidenced by the statement contained in the contract providing for payment of the principal in a fixed period of three years.

The status of the title is to be determined as of the day of closing and not as of the day of contract. If there were $21,000 of mortgages existing on September first it would be of no consequence that other mortgages, either in excess or less than that amount, were liens on the property prior to that time. It does appear that on September first plaintiff's assignor was the owner of the property, had good and marketable title thereto, and that the existing mortgages were as stated in the agreement. Neither on the trial nor in the brief of the defendant is it claimed that there was a failure to tender the deed on September first. The measure of damages is the difference between the contract price and the market value at the time of performance, September 1, 1925.

I, therefore, direct judgment for the plaintiff in the sum of $20,000.