Hillsborough, } No. 3063.
April 4, 1939. }

ANNIE REID KNOX *v.* FRED ALLARD & a.

FRED ALLARD & a. *v.* ANNIE REID KNOX.

*Sullivan & Sullivan (Mr. Thomas E. Dolan* orally), for the plaintiff.

*Omer H. Amyot* (by brief and orally), for the defendants.

MARBLE, J. The plaintiff testified that she gave the memorandum to Allard early in the summer of 1928, after she had sold "Hill Top" and had asked Allard to come to Manchester to work for her there; that it was a "tentative draft" and "given to him to take home to his wife for her to consider"; that nothing was said "as to his bringing it back"; that he later reported that the suggested arrangement was not satisfactory, since he believed "that he would have to be bound up for his life" and yet "could be dismissed if his work wasn't satisfactory," and that after this decision had been reached, the plaintiff "ignored" the memorandum as "negligible."

The plaintiff's sister, who lived in the Knox home, testified that the memorandum was written on paper furnished her by the Manchester Union-Leader when she was writing book reviews for that newspaper, that she ceased work as reviewer in November, 1928, and that she did not recall ever seeing a piece of that kind of paper in the Knox house at Manchester.

The memorandum is written in ink in the plaintiff's handwriting and is without date except for the penciled figures "1934" at the bottom of the page. Josephine Allard, who kept a book of accounts (Allard himself could neither read nor write), testified, "I might have wrote it [the date], but I don't remember of ever writing it." She conceded that the figures resembled the same figures in her account book. She further testified that her husband brought the memorandum home on the evening of June 15, 1934, and that she remembered the date because she "wrote it right down." The book contains the entry, "June 15 Rec Paper from Mrs. Knox valuble." But this entry bears every indication of having been inserted in the space under the marginal date (1934) of a previously written entry relating to the sale on June 21 of the defendants' farm. The book is crudely kept, however, and there are many entries which do not appear in chronological order.

Allard stated quite positively that the plaintiff gave him the memorandum on June 15, 1934, in the presence of her husband, Colonel Knox, who read the memorandum to him. The trial justice has found that Colonel Knox "was not present when the paper was delivered and that he never knew anything about it until after these proceedings were brought." He has also found that the sheet of paper on which the memorandum was written is similar to that used in 1928 by Miss Reid, the plaintiff's sister, and that Miss Reid "ceased receiving any more of this kind of paper" in November of that year. He has further found that it is "somewhat significant that the Allards, on June 21, 1934, when they executed the deed for their South Weare farm, conveying the same to Mrs. Knox, made no mention of the life interest in the Union Street property to the attorney, John L. Sullivan, Esq., whom they knew well and had entire confidence in."

It cannot be said, however, that these special findings are necessarily inconsistent with the trial court's general conclusion that the memorandum was delivered to the defendants in June, 1934, in pursuance of an agreement on the plaintiff's part to grant them a life interest in the Union Street property. The court could accept the defendants' general assertions as to the delivery of the memorandum and reject their testimony as to some of the attendant circumstances. *Harlow* v. *Leclair*, 82 N. H. 506, 512; *Watkins* v. *Railroad*, 83 N. H. 10, 13.

Allard testified that in 1932 he built a new house on his farm in South Weare at a cost of $8,280 and that he sold the house and farm

to the plaintiff in 1934 on her assurance that he and his wife could live in the caretaker's house all their lives and would never have to move again; that he was unwilling to convey the property until he received a "paper" and that the plaintiff told him when she gave him the memorandum that it was valuable.

The Presiding Justice in his findings calls attention to the following facts: The plaintiff was so anxious to have Allard return to work for her that she bought his farm for $6,000 and sold it for $5,500. The memorandum, which the plaintiff claims to have written early in the summer of 1928, refers to the Manchester property by street numbers; these numbers were "probably not designated" by the city engineer until after the houses were built or at least until after their construction had begun; the construction of the caretaker's house was begun on June 18, 1928, and finished September 4, 1928; the main house was started November 20, 1928, and finished October 21, 1929. The plaintiff tried to sell the Manchester property in 1931, and the defendants did not object but merely returned to South Weare; she offered it for sale again in 1937, whereupon the defendants protested and showed the memorandum to the real estate agent.

A witness, who had once been a neighbor of the defendants, testified that he was present at their home in South Weare one evening in June, 1934, when the plaintiff brought Allard home from his work and that Allard then "presented" a paper to his wife; that Allard showed the paper to him the next evening and "it said that Mr. and Mrs. Allard should have a life-long residence there" at Union Street "as long as they lived."

The sufficiency of this evidence to sustain the finding that the memorandum was delivered in 1934 cannot be doubted: the question of the weight of the evidence was for the trial court. *Charles I. Hosmer, Inc.* v. *Federico*, 89 N. H. 378.

The decree, however, must be vacated.

An agreement to convey an interest in real estate in consideration of services to be rendered is within the statute of frauds. *Ham* v. *Goodrich*, 37 N. H. 185. The plaintiff did not sign her name at the end of the memorandum and there is nothing to indicate that she intended its insertion in the body of the document to operate as a signature. See Annotation, 112 A. L. R. 937, 944; 2 Williston and Thompson, Contracts, *s.* 585.

"It [the memorandum required by the statute] may be signed at any place, at the top or in the body. A signature, however, there must be, and a name, written or printed, is not to be reckoned as a

signature unless inserted or adopted with an intent, actual or apparent, to authenticate the writing. . . . Whether such an intent is to be inferred will be at times a question of law and at others one of fact, according to the circumstances." *Cardozo*, C. J., in *Mesibov &c. Inc. v. Company*, 245 N. Y. 305, 310.

The memorandum in question was drawn in the form of an agreement containing mutual promises, and was obviously designed for execution by all four parties. The defendants regarded it as an unsigned document. Allard testified that his wife called the plaintiff's attention to the fact that the paper was not signed whereupon the plaintiff, after stating that it "was just as good as if her name was signed," said: "When Mr. Knox comes back from Chicago, I will have him sign the paper and I will sign the paper." He testified further: "And she said, 'When you—As quick as you have moved into your little house in Manchester, we will sign the paper,' but it was never done . . . . I asked her a couple of times, and she always said, 'Mr. Knox was too busy,' and she couldn't bother him, so I let it set that way."

The plaintiff's statement that "the paper was just as good as if her name was signed" did not amount to a concession that she regarded her name in the body of the document as a signature, but rather that she intended to be bound by the terms of the memorandum whether it was signed or not. This did not fulfill the requirements of the statute. The party to be charged (P. L., *c.* 327, *s.* 1) "must have intended not merely to contract, but to sign." *Mesibov &c. Inc. v. Company*, *supra*, 311, 312. No such purpose is here apparent.

The oral contract is unenforceable (*McCrillis v. Company*, 85 N. H. 165; *Muir v. Bartlett*, 78 N. H. 313; *Weeks v. Lund*, 69 N. H. 78), and although the defendants have sold their farm and changed their position in reliance on the plaintiff's promise, they are entitled merely to be made whole and are not entitled to obtain the relief which the trial court has ordered.

While mutuality of remedy is not in all cases indispensable to the granting of specific performance (*Eckstein v. Downing*, 64 N. H. 248, 260), it is the invariable rule that "Equity will not compel specific performance by a defendant if, after performance, the common law remedy of damages would be his sole security for the performance of the plaintiff's side of the contract." Ames, "Mutuality in Specific Performance," 3 Columbia Law Rev. 1, 3, 12. The facts of the cases cited in support of this doctrine (*Chadwick v. Chadwick*, 121

Ala. 580; *O'Brien* v. *Perry*, 130 Cal. 526; *Ikerd* v. *Beavers*, 106 Ind. 483) are quite similar to the facts of the present case.

The most essential feature of Allard's undertaking was the rendering of personal services for the remainder of his life (see *Ikerd* v. *Beavers*, *supra*, 485) and even if the memorandum had been properly signed and the plaintiff had performed her part of the agreement, she could not have compelled Allard to perform his part, since specific performance of contracts of service is not ordinarily decreed. *McCrillis* v. *Company*, 85 N. H. 165, 167; *Kann* v. *Company*, 81 N. H. 535, 541; 25 R. C. L. 305.

The situation is unlike that in *White* v. *Poole*, 74 N. H. 71, where the defendant (plaintiff in the bill in equity) had completely fulfilled her obligation before bringing her suit. "A plaintiff who has performed his part of the contract, although he could not have been compelled in equity to do so, may enforce specific performance by the defendant." 3 Columbia Law Rev. 1, 2.

Furthermore, if the defendants were otherwise entitled to specific performance, a decree therefor would appear to be a useless formality in view of P. L., c. 354, ss. 1, 25, authorizing the sale of real estate on proceedings for partition.

The plaintiff's exception to the decree is sustained.

*Decree vacated.*

All concurred.